(5 Misc. Rep. 209.)

### ROBINSON v. MANHATTAN RY. CO.

(Common Pleas of New York City and County, General Term.   October 2, 1893.)

1. NEGLIGENCE—OMISSION OF PRECAUTIONS.
     Omission of precaution against a casualty so improbable as to be beyond the range of reasonable apprehension is not actionable negligence.
2. SAME—CONTRIBUTORY NEGLIGENCE.
     One who voluntarily assumes a position of danger, the hazards of which he understands and appreciates, cannot recover for an injury from a peril incident to the position.
3. SAME—ERROR OF JUDGMENT.
     For an error of judgment under imminent danger a party is responsible, when by his own fault he incurs the danger.
4. SAME—BOARDING MOVING TRAIN.
     The boarding by a person of an elevated railway train while the gate is closing and the train moving, and persisting, against an effort to remove him, in the precarious position thus obtained, is such contributory negligence as bars recovery for his death in consequence of that position.

(Syllabus by the Court.)

Appeal from trial term.

Action by Azema Robinson, administratrix of Jean Wildner, deceased, against the Manhattan Railway Company, to recover damages for the death of plaintiff's intestate, by reason of the alleged wrongful act of defendant. The court dismissed the complaint at the close of plaintiff's case, on the ground that plaintiff had not shown that deceased was free from contributory negligence, and there was no evidence that defendant was guilty of negligence. Plaintiff appeals.   Affirmed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

Joseph Fitch, for appellant.

Julien T. Davies and Joseph H. Adams, for respondent.

PRYOR, J.   When, at the close of the plaintiff's case, the defendant moved to dismiss the complaint, this state of fact was presented for the judgment of the court:   That, during a pause of defendant's train at the Fiftieth street station, the intestate was seen "running for the gate;" that while the gate was closing, and the train in motion, he got a footing on the platform of a car; and that despite warning, and efforts to remove him, he clung to the platform until he struck the railing, and was so precipitated to his fatal fall. The appellant imputes negligence to the defendant in three particulars. The first allegation of fault is:   "In maintaining a guard rail at the end of the platform just of sufficient height to trip and throw headlong a passenger circumstanced as was the deceased." Negligence is the omission of proper care, and proper care is due precaution against a danger likely to happen, and reasonably to be anticipated. Against perils that are merely possible, and not within the compass of reasonable foresight, the law requires

no man to make provision; otherwise, a responsibility would be imposed quite beyond human infirmity to escape, and to which no limit could be prescribed. Now, was it within the reach of rational anticipation that any one should be "circumstanced as was the deceased?" In other words, could it have been foreseen, as a fact of probable occurrence, that under the circumstances a man would place himself in the position occupied by the intestate? In our judgment the catastrophe was a casualty beyond the scope of reasonable apprehension, and so was one against which the defendant was under no obligation to make provision. Again, the appellant argues that the defendant was at fault "in closing the gate and starting the train as the deceased was in the act of stepping upon the platform." We do not so understand the evidence. On the contrary, the proof is that the intestate essayed to get on the platform while the train was moving and the gate in process of closing. But would it be wrongful in the defendant to start the train and shut the gate while a passenger was in the act of stepping from the platform of the station to the platform of the car? If so, then, as long as passengers persist in gaining entrance to the cars, the train must be halted,—a conclusion quite incompatible with the celerity of movement essential to rapid transit. By closing the gate and starting the train while a passenger is in the act of stepping on the platform of the car, the defendant exposes him to no peril. In the present case the intestate was not endangered by such closing and starting, but the injury he suffered was from clinging to the car in his exposed position. Had he remained on the platform of the station, he would have been secure. Thirdly, the appellant contends that the defendant was blameworthy "in failing and refusing to open the gate when the deceased was in a position of great danger, through no fault of his." As will presently be seen, the assumption is unwarrantable that the intestate was without fault in attaining his position of peril; and then the proposition is that negligence is predicable of the misjudged act of the gateman in a sudden emergency with which he was confronted by the misconduct of the intestate,—a proposition discredited by the uniform current of decision. Besides, the gateman was authorized to act upon the assumption that the intestate, when denied entrance into the car, would step back on the platform of the station. Supposing, however, but not conceding, fault on the part of the defendant, nevertheless our conclusion is that the intestate's own negligence was the cause of his death. Admitting that, were the evidence conflicting or its import equivocal, the nonsuit would be error, we are unable to find in the record any dispute as to the essential facts, or any doubt as to the inferences they suggest. That the gate was partially shut, and the car in motion, when the intestate persisted in boarding it, and that the position he assumed and obstinately maintained was of obvious and inevitable peril, are propositions upon which the evidence allows no difference of opinion. Upon a question before us, an adjudication by the court of appeals supersedes all argument; and by the decision in Solomon v. Railroad Co., 103 N. Y.

437, 9 N. E. Rep. 430; in Card v. Railroad Co., (N. Y. App.) 9 N. E. Rep. 433; and in Hunter v. Railroad Co., 126 N. Y. 18, 26 N. E. Rep. 958,—we are constrained to affirm this judgment of nonsuit. The appellant essays to distinguish her case by the circumstance that whereas, in Solomon v. Railroad Co., it appeared that the intestate was familiar with the operation of the trains, here the intestate was ignorant of their movements and management. But, supposing such ignorance to have imposed upon him a less instead of a greater diligence, it was still incumbent on the plaintiff, in disproof of her intestate's negligence, to show such ignorance; and of the fact she gave no adequate evidence. Another infirmity of the position is that in the Solomon Case the court ruled that the attempt to board the moving train was in itself an act of contributory negligence. Assuming that the intestate was "properly upon the train," the appellant argues that he was "placed in imminent peril by the defendant's act," and so was not responsible for his misjudgment in continuing on the platform. But by the decision of the court of appeals the intestate was wrongfully on the train; that is, was there by an act of negligence which made him responsible for the consequences of the position. "The rule that a person in a position of danger is not responsible for a mistake in getting out of it is subject to the qualification that he must have got into the danger without fault or negligence of his own." Railroad Co. v. Aiken, (Pa. Sup.) 18 Atl. Rep. 619. The dismissal of the complaint is justified by still another familiar rule of law, namely:

"One who knows of a danger from the negligence of another, and understands and appreciates the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure." Fitzgerald v. Paper Co., 155 Mass. 155, 29 N. E. Rep. 464.

The presumption is that the intestate was a man of common sense and ordinary experience. As such, he must have known the perils of the position, and yet he voluntarily assumed it, and pertinaciously maintained it. It is a clear case for the application of the maxim "volenti non fit injuria." We see no escape from the conclusion that the learned trial judge correctly disposed of the case, and accordingly the judgment is affirmed, with costs. All concur.