Max Plutschow, Appellee, v. The Metropolitan West Side Elevated Railway Company, Appellant.

### Gen. No. 15,131.

CONTRIBUTORY NEGLIGENCE—*person seeking to board elevated train.* *Held,* that the plaintiff in this case was guilty of contributory negligence which barred a recovery by attempting to board and in persisting in clinging to a moving car on an elevated railway train after the gates thereon had been closed or were being closed.

Baker, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the October term, 1908. Reversed with finding of facts. Opinion filed May 19, 1910.

**Statement by the Court.** This is an appeal from a judgment for $1,500 against the defendant in an action for personal injuries.

The declaration, which contains six counts, avers in

590    APPELLATE COURTS OF ILLINOIS.

Plutschow v. Metropolitan West Side El. Ry. Co., 155 Ill. App. 589.

substance, first, that the defendant in violation of duty neglected and failed to stop its cars a reasonable length of time at the station to enable plaintiff to board the same with safety, but when plaintiff was in the act of boarding the car and using due care for his own safety defendant caused said car to be suddenly started, throwing defendant against the station platform; and second, that while plaintiff was boarding the defendant's car the defendant by one of its servants pushed plaintiff with great force and violence, causing him to be thrown off the car with great violence to and against the platform of the station.

The accident in question occurred about March 15, 1903, at the defendant's elevated station at 12th street, Chicago. The first of plaintiff's witnesses testifies that he was riding in the smoker of the train, consisting of two cars, in connection with which the accident occurred; that he saw a man get on the back platform of the smoker at the 12th street station and another man right behind him getting on, and that just as the last of the two men was getting on the conductor "pushed the gate in front of him and pulled the bell and the car started, and Mr. Man was hanging on the car;" that the conductor "stood right still and didn't do a thing;" that when the train reached the rail "at the north end of the platform the man was pushed off and fell to the area way below; that the train was stopped and backed up and the man picked up." On cross-examination he says "the man was on, he had one foot on the platform of the car and then the gate was closed in front of him. It was the right foot. I saw the conductor close the gate against Mr. Plutschow. I did not see it touch him anywhere. The gate was closed. As far as being absolutely closed I cannot say. It was closed for all purposes.    *    *    *    The man had his foot over onto the car platform—the right foot. Just had his foot on there, that is all. It might be he had only his toe on." The plaintiff testified in his own behalf that on the evening of March 14, 1903, he had

been attending a birthday party, which he left about ten minutes before twelve o'clock and went to the 12th street station; that a Mr. Hedwick was with him; that Hedwick was in Mexico at the time of the trial; that the two after paying fare went upon the platform of the station and "sat on the bench," waiting there about fifteen minutes. Plaintiff says: "I saw the car come in. Then I got up off the bench and the car pulled past me and we went to where the car stopped, then Mr. Hedwick gets on and I was right after him and just before I stepped on the platform of the car the conductor he runs out one hand and pulls the bell and with the other hand he shuts the gate in my chest. It caught my feet; my right foot I had on the platform of the car and my left foot about half. My right foot I had right in the car and my left foot was about half and the gate was open about eight inches and I passed inside and Mr. Hedwick he also talked to the conductor to open the gate, and the conductor put his hand in my breast and pushed me back and then the car run fast away and I feel a jab like that (indicating) and then I was all black in my eyes and I fell down below to the ground." On cross-examination he testifies that he had supper at the party at nine o'clock and "drank three glasses of beer what we call a snip. I drank two at supper and after that I drank two more, and that is all I had. I had not drank anything that after-noon." He further says; "I seen the car coming and we got up to make the train. My friend was about two or three feet ahead of me. He run and I run, too. The train pulls fast in, as fast as it comes to stops. We both ran for the train. Mr. Hedwick gets on the train and I went to jump on too, and this moment the con-ductor rings the bell and shut the gate. I got my left feet on the platform of the car and this minute he rings the bell and shuts the gate. My left feet I have half on to it. My left foot and my hand on the gate and I want to push the gate in. The gate was within eight inches of being shut when I got on. The gate was

open. When I get on, the gate was open when I had my right foot on and then this minute the conductor he shuts the gate.'' He says further: ''I got my right foot on. I had got the half of my left foot on. I was in that position when the conductor shoved the gate against me. The gate came against me right here (indicating about the waist line). The train had started up. I can't tell how far the train had moved at the time the conductor pushed the gate against me. The car was not moving when I started to put my foot on the platform. It was standing still. At this moment he shut the gate, rung the bell and the car is moving on. When he shut the gate against me I tried to push the gate inside that I get in. The conductor got his hand on my chest and he said 'Get off' and pushed me off. Pushed me outside just as the train was starting up. * * * I kept pushing in all the while. My friend was on the platform of the car and he hollered for the conductor and he tried from the inside to open the gate and he couldn't. I pulled on the outside and the conductor pushed. 'Go off' he said.'' This is in substance all the testimony in behalf of the plaintiff so far as it relates to his attempt to get on the train.

There is evidence introduced in behalf of the defendant which tends to show that plaintiff attempted to get on the car after the gates had been closed and the signal for starting given. The conductor of the train testifies that when the train stopped at 12th street station several persons got off and two or three got on the cars, that there was no one on the platform when he closed the gates and rang the bell and called out the next station in one coach; that as he turned to call it in the other coach he saw the plaintiff having his hand on the gate and ran and called to him to ''let go.'' He states that at the time they were about five feet from the railing on the end of the station platform by which the plaintiff was struck and thrown down on the surface of the ground beneath. The next witness for the defense was a passenger who testified that ''as the train started a gentleman came up the steps and

Plutschow v. Metropolitan West Side El. Ry. Co., 155 Ill. App. 589.

grabbed hold of the gates and just as the conductor turned around he saw it was too late and he hit the railing, going over;'' that he saw this man running up the stairway making a run for the train; that the first thing that attracted his attention was when the man was grabbing for the gate; that he ''saw the conductor close the gates.    When he closed the gate this man was not up to the steps.''

Another passenger who was in the employ of the American Express Co. and was with the witness last referred to, testified that after the train had stopped and the passengers had got on and after the conductor had closed the gates and ''given the bell'' and had gone to the smoker and called the next station, the witness and his companion noticed the plaintiff ''coming running up alongside the train and grabbed the gates, and by that time the conductor turned around and noticed him, and by being too late the car got to the end of the platform and it forced him over and he dropped below.''    He says ''there was nobody on the platform at the time except this man;'' that the plaintiff ''just run from the stairs to get the car as the car was passing along there.    He hung to the car, to the gate.''    A third passenger testifies that he saw a man behind two other men ''running up trying to get aboard the train;'' that the last man tried but did not get aboard.

The plaintiff suffered a broken leg, which although healed has been somewhat shortened and it is alleged he was otherwise injured.

ADDISON L. GARDNER, for appellant; W. W. GURLEY, of counsel.

TATGE, ABBOTT & KEOPKE and THOMAS A. LEACH, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of the defendant, first, that the Superior Court erred in not directing a verdict in

594        APPELLATE COURTS OF ILLINOIS.

Plutschow v. Metropolitan West Side El. Ry. Co., 155 Ill. App. 589.

favor of the defendant at the close of the plaintiff's evidence; and second, that the verdict is against the weight of the evidence.

As to the first of these contentions defendant insists that the evidence in behalf of the plaintiff shows the accident occurred solely by reason of the negligence of the plaintiff himself.

The testimony in plaintiff's behalf as to the accident is given by himself and one other witness. This evidence is fully set forth in the foregoing statement.

It is contended by defendant's counsel that the plaintiff's evidence tends to show that plaintiff met with the accident by reason of his own negligence in trying to get on the train when the gates were closing, in clinging to the car outside the gate, and that he was brushed off by the railing within about five feet, it is said, after the car started. We deem it unnecessary critically to analyze this evidence to determine whether or not it should be regarded as sufficient to make a *prima facie* case, since we are compelled to the conclusion that whether so or not, the verdict is not supported by the preponderance of the evidence.

The plaintiff's statement that he was on the platform at the time the train arrived has no corroboration by any other witness. Three passengers testify to the effect that they saw him running to catch the train and two of them corroborate the conductor, who testifies that he had closed the gates before the plaintiff reached the car. This is consistent with plaintiff's statement that he and his companion "both ran for the train." Why they should have run for the train if, when it came up, they had been waiting for its arrival fifteen minutes, the plaintiff does not attempt to explain. If, however, as the preponderating evidence tends to show, plaintiff was late in getting to the station and came running up the stairway and along the station platform as the conductor was closing the gates, and was still some feet away when the gates were actually closed, the statement of the plaintiff himself that he "ran for the train" becomes intelligible. Plaintiff tes-

tifies that "the gate was within eight inches of being shut when I got on." He says the gate came against him at the waist line as he attempted to board the car and that "the train had started up. I can't tell how far the train had moved at the time the conductor pushed the gate against me." He thus seems to concede that he was trying to get on a moving train. The conductor testifies that the train made the usual time stop to take on passengers and let them off; that when he closed the gates and rung the bell no one was on the platform, and that after doing this and calling off the next station in one car and when he turned to call it off in the next car he saw plaintiff with his hand on the car gate. As to the charge in the declaration that the conductor pushed the plaintiff off the car, it is not sustained by the evidence. Plaintiff's evidence tends to show that he put his hand against plaintiff, telling him to get off, while plaintiff apparently might still have done so in safety on the station platform; but the evidence on both sides shows conclusively that it was the rail at the end of the platform which brushed plaintiff off the train. The evidence fails we think to show negligence on the part of the defendant causing the accident and does tend to show clearly that the plaintiff's injuries were the result of his own negligence in attempting to board and persisting in clinging to a moving car on an elevated railway train after the gates thereon had been closed or were being closed, thus giving full notice that the time for an intending passenger to board the car had passed. The case is not unlike that of Robinson v. Manhattan Ry. Co., 5 Misc. 209 (N. Y.), in which it is said: "The gateman was authorized to act upon the assumption that the intestate when denied entrance into the car would step back on the platform of the station." In Solomon v. Manhattan Ry. Co., 103 N. Y. 437, it is said: "It is we think the general rule of law, established by the decisions in this and other States, as claimed by the learned counsel for the respondent, that the boarding or alighting from a mov-

ing train is presumably and generally a negligent act *per se*, and that in order to rebut this presumption and justify the recovery for an injury sustained in getting on or off a moving train, it must appear that the passenger was, by the act of the defendant, put to an election between alternative dangers, or that something was done or said, or that some direction was given to the passenger by those in charge of the train, or some situation created, which interfered to some extent with his free agency, and was calculated to divert his attention from the danger, and create a confidence that the attempt could be made in safety.''

For the reason indicated the judgment of the Superior Court must be reversed with a finding of facts.

*Reversed with finding of facts.*

Mr. Justice Baker dissenting.