IDA E. GRIFFIN, as Administratrix, etc., of BERTHA L. GRIFFIN, Deceased, Appellant, *v.* THE STATE OF NEW YORK, Respondent. (Claim No. 23521.)

Third Department, March 17, 1937.

*Cobb, Cobb & Simpson* [*Harold E. Simpson* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden* and *Burns F. Barford, Assistant Attorneys-General,* of counsel], for the respondent.

McNamee, J.   Enfield Glen State Park is a part of the park system maintained by the State, and is located near Ithaca in Tompkins county.   It consists of a rugged mountainous section, quite unimproved, and of natural beauty.   At the entrance to the park is a sign four feet square on which is printed in large letters: " Proceed with care.   You pass through this park at your own risk." One of the attractions of the park is a deep gorge between the mountain sides, at the bottom of which a stream flows.   Along this gorge, from a point somewhere near the entrance, runs a path four or five feet wide, located on natural ledges and terraced into the mountain, and about eighty feet above the stream.   The path is very irregular, and is maintained at varying levels, so that in following it a distance of a half mile from the entrance, it is neces- sary to make use of twenty-four steps to higher elevations and one hundred and fifty-five steps to lower ones.   No guard rails are maintained along the path, except where ravines and the like are crossed, but there are guide marks and low guide walls here and there.

At a point on the main path, and at right angles to it, a by-path leads to a place called the " Look-out," situated on the top of a perpendicular wall of the gorge.   This look-out suggests a narrow balcony over the stream, about two and one-half feet wide, and is reached by nine steps descending from the main path.   These steps vary in width and height, are rough and irregular, and partly natural.   The descent of the steps is at a grade of about seventy- five per cent, or about equal to that of stairs commonly found in dwellings of inexpensive construction.   There is no guard rail on the steps, and the balcony has no protection except a stone wall about fifteen or eighteen inches high, on its outer edge.

On April 22, 1933, in the middle of the afternoon, and in fine weather, Bertha L. Griffin of Ithaca, visited the park with three companions.   She was a young woman of twenty-two years, a trained nurse, in good health, and evidently in good spirits.   She had visited the park previously, and also the look-out.

Miss Griffin was walking in the immediate  company of one of her companions, a young man.   On reaching the steps to the look-out, he suggested that they go down there, but the young woman declined; and he passed beyond the steps.   Within a few seconds he turned and saw Miss Griffin starting to walk down the steps.   As she did, she went forward with a continuous motion, increased her pace, and at the bottom was moving quite rapidly. She did not slip, nor stumble, nor stagger, nor turn her ankle, nor make any outcry.   She gave no sign of an involuntary act, and uttered no involuntary sound.   She descended naturally, face for-

ward, and in an upright posture. When she reached the balcony she stepped on the wall, first with one foot and then with the other, and hesitated momentarily. She then turned her body in some degree, and put out her arms as though trying to save herself, and fell to the gorge below. She went down the steps, and up on the wall, without giving evidence of any accident, and in silence.

The foregoing is the testimony in the case, given by friendly witnesses, the young man who was at her side, and another relative who was a few paces away. It is upon this evidence that the claimant seeks to hold the State responsible for the injury and death of the deceased.

From the undisputed evidence it is clear that the mountain path followed by this group, from their entrance into the park until the time of the accident, was a more or less treacherous place to walk at best. That was the nature of the place, little improved and quite unspoiled, as was well known to all of them. It was this characteristic that made the park attractive, that furnished the desired reaction, possibly the thrill — a mild form of mountain climbing. The steps down to the balcony were off and apart from the main path. It was not necessary to go upon them; their appearance, their location, and the place to which they led made it manifest that only the venturesome would essay their course. And all of the evidence on the question puts it beyond doubt that the steps, the balcony, the low wall at its edge, and the precipitous gorge over which they hung, were not only open to the most casual view, but challenged inescapably the attention of one standing on the main path, and before making the descent. It is but a reasonable inference, if the evidence on the point be not direct, that these persons entered the park as sightseers, to look, and to enjoy the views; and it was from the path above the steps in question that the beauties, as well as the dangers of nature, were wholly unobscured. And whether one should court the added danger or incur the added risk of injury by leaving the main path for the steps and the balcony, was clearly one of personal choice. There was no risk that was not perfectly evident, there was no hidden danger. From all the evidence in the case, it is beyond dispute that both were assumed with full knowledge of all the facts and circumstances.

The Court of Claims dismissed the claim on the grounds that the deceased was negligent, and the State was not. And the appellant contends that the court below resolved both of these questions against the weight of the evidence. It may be that the problem here will clear without enlargement upon the rule of negligence, if due consideration be given to the doctrine of assumption of risk.

In her brief the administratrix cited three cases. Two of these were highway cases, and the other had to do with municipal care of a village street. Clearly they are not applicable here. A fourth case cited by the appellant involved an injury in a State park, and bears some resemblance to the one under review; but it is to be distinguished. (*Kittle* v. *State of New York*, 245 App. Div. 401; affd., 272 N. Y. 420.) In the *Kittle* case, cited in the dissenting opinion, there was a natural fissure between two ledges of rock, " Fat Man's Misery," extending downward at right angles with the surface, to a distance of thirty-five feet. A ladder had been installed which enabled a prospector to reach the lower level. When one started down this ladder, it was not evident what was beyond. And having reached the bottom it would be with difficulty that one could retrace his steps to the upper surface. And at the bottom the pedestrian was practically required to go forward over a " steep, rough and rocky slope to the bear path," apparently the only path there was. There were signs maintained which directed people to this dangerous place, and there were not only no guard rails, but there were no signs indicating danger, or to give warning that there was a path difficult to tread, on the edge of which was a sheer drop of fifty feet. It was in following this dangerous path that the young woman in that case fell over the edge, and fifty feet to the base of the cliff. The way to the " bear path " from the foot of the ladder was the only means of escape for many, and indeed for all who could not lift themselves thirty-five feet on a ladder. The danger involved was a hidden one until the final decision became imperative. Those of more sober judgment and those of adventurous spirit were placed in a like position of danger; and escape therefrom, if possible, was hazardous. Not so here. Here was no trap. The risks and dangers were apparent. The choice was freely made.

Long ago it was held that even in our cultivated and highly developed city parks no duty rested upon the city to keep lighted the irregular places and steps connecting different elevations in its walks. Such a duty, and the one to light city streets were held to be widely different. (*O'Rourke* v. *Mayor*, 17 App. Div. 349.) And before that, the General Term of Common Pleas held that an invitee of a theatre who occupied a seat in a gallery that sloped at an angle of fifty-five degrees, and who stumbled and fell five and one-half feet over two rows of seats and over the guard rail, was not entitled to recover, because the conditions complained of were as obvious to the plaintiff as to the defendant. (*Dunning* v. *Jacobs*, 15 Misc. 85.) When an experienced skater observed that the ice in a private rink was soft, and knew it was growing softer while she was

skating, and because of its condition her skate stuck in the ice, and she was hurt, she could not recover, even though the owner were negligent in permitting the use of its rink. If the defendant were negligent, the plaintiff was equally so. (*Shields* v. *Van Kelton Amusement Corp.*, 228 N. Y. 396.) So, even assuming the negligence of the State in not taking precautions that would reduce the possibilities of injury, it would not aid the appellant here. " ' One who knows of a danger from the negligence of another, and understands and appreciates the risk therefrom, and voluntarily exposes himself to it, is precluded from recovering for an injury which results from the exposure.' " (*Robinson* v. *Manhattan R. Co.*, [Com. Pl., Gen. Term] 5 Misc. 209, 212; *Fitzgerald* v. *Connecticut River Paper Co.*, 155 Mass. 155; 29 N. E. 464.) The Massachusetts case (p. 158) makes the further observation: " It would be unjust that one who freely and voluntarily assumes a known risk for which another is, in a general sense, culpably responsible, should hold that other responsible in damages for the consequences of his own exposure."

In a railroad crossing case the Court of Appeals applied the same principle: "A plaintiff who negligently subjects himself or his property to a risk of harm from a defendant's negligence may not recover for injury resulting therefrom, except as the doctrine of last clear chance is applicable." (*Storr* v. *New York Central R. R. Co.*, 261 N. Y. 348, 351.)

A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein. (American Law Institute, Restatement of the Law of Torts, § 340.)

It is plain that the State did not make the place in question safe for all kinds of conduct, and all kinds of temperaments and people, those of wide degrees of physical courage, self confidence, and timidity — the cautious, the bold in spirit, and the rash. If such a failure be negligence, the State cannot escape that imputation. But no mishap occurred, and the deceased was not misled. There is no evidence that she was sick, or that she was the victim of any untoward event, until she took her place on the wall above the precipice. The failure of the State, if there were a failure, to provide for greater protection against the precipitous bank of the gorge, was directly before her eyes as she proceeded to the point of danger. This was true as much as if she had been coming down the trackless side of the mountain. She voluntarily exposed herself to whatever danger was there, whatever the cause. All of the

evidence in the case leads to a single conclusion — she did what she did knowingly, and did this as a matter of choice.

The judgment of the Court of Claims was proper, and should be affirmed.

CRAPSER and BLISS, JJ., concur; HILL, P. J., dissents, with an opinion in which HEFFERNAN, J., concurs.

HILL, P. J. (dissenting). Appeal from a judgment of the Court of Claims which dismissed a claim for damages alleged to have been suffered through the death of claimant's intestate, a young woman twenty-two years of age, who came to her death on April 22, 1933, in the Enfield Glen State Park by falling from the " look-out " down a perpendicular wall of rock to the floor of the gorge eighty feet below. The negligence alleged is failure to erect a proper barrier around the look-out, or a handrail along the stairs leading thereto, to remove shale, leaves and branches from the stairs, or to warn of the danger.

All persons are invited to enter the park to enjoy its attractions and scenery. It is a strip of land about three miles long, lying on each side of a deep gorge cut by the waters of a creek. A path has been constructed along the side of the gorge. From this main path, nine stairs cut in the rock lead down to the " look-out " from which a view of the falls can be obtained. The floor of the look-out is seven feet one and a half inches below the level of the main path (this dimension is the sum of the nine stair risers as found) and horizontally seven feet six inches away from it (the sum of the tread widths as found) and on the very edge of the chasm. From the floor of the look-out to the top of the stairs the diagonal (the hypotenuse of the triangle) is about ten feet in length. The steps were cut into the rock and the thickness of the stratum determined the height of each riser. The treads vary from eight to twenty inches in width. The riser from the level of the look-out to the tread of the first stair is nineteen inches, the tread of that stair is ten and a half inches wide. The look-out is from twenty-eight to thirty inches wide. On the gorge side of the look-out there is a little wall, fifteen to eighteen inches in height and ten inches wide. The court has found that on the day of the accident the stairs were of uneven tread, rough and covered with shale which had dropped down from the bank above, and with leaves and branches from the surrounding forest trees.

One of intestate's companions says that a brief interval before the accident he had suggested a descent to the look-out, to which she had demurred. That he had passed the path before he learned that she was descending. He describes the incidents that led up to her fall. " She was standing at the top of the steps and she

started down the steps. * * * Started to walk down, and then she kept going faster all the time; she was going quite rapidly at the bottom. * * * I couldn't say exactly, but she was up on this little wall before I got down the steps. * * * She started down slowly. * * * She was going quite rapidly, at the bottom of the steps and she seemed to step up on the wall and then tried to stop. * *. * I would say it was a continuous motion down the steps and over the wall; it was a continuous motion down the steps and over the wall, with the hesitation of a second or a fraction of a second at the wall. * * * While she was on top of the wall, she kind of half turned around and flung either one arm or both arms back, tried to get her balance, and I was coming down the steps at the time, and I tried to grab her hand; one hand seemed very close to me, and I didn't quite reach it, and then I stopped, myself. I thought I was going over, myself."

The majority opinion quotes the text of section 340 of the Restatement of the Law of Torts to sustain the conclusion reached. That rule applies as indicated in comment " a " printed therewith. " The rule stated in this Section does not apply to all persons who may lawfully enter or remain upon land but only to licensees who, * * * derive their privilege to enter or remain upon the land solely from the consent of the possessor thereof." This long has been the rule in this State as to persons whose right to go upon land rests solely upon consent. (*Sturger* v. *Van Sicklen*, 132 N. Y. 499; *Fox* v. *Warner-Quinlan Asphalt Co.*, 204 id. 240; *Downes* v. *Elmira Bridge Co.*, 179 id. 136; *Cusick* v. *Adams*, 115 id. 55; *Larmore* v. *Crown Point Iron Co.*, 101 id. 393.)

Enfield Park was given to the State and accepted. (Laws of 1920, chap. 343.)* The conditions of the gift and of the acceptance are recited in the above statute. " Enfield Falls Reservation shall forever be reserved and maintained by the State for the use and enjoyment of the public. No fee shall be charged for entrance to or passage into or through any part thereof. It shall be the duty of the Board to preserve such reservation in its natural condition so far as may be *consistent with its use and safety* and to improve it in such a manner as not to lessen its natural scenic beauty." The obligation of the State as to all its parks is substantially the same. (Conservation Law, § 718.) The State is liable if its officers and employees fail to construct such improvements as are made with reasonable regard for safety. (Court of Claims Act, § 12-a.) The liability of the State to bare licensees was considered in *Splittorf* v. *State of New York* (108 N. Y. 205). In that case a person was drowned in the canal when he sought to cross a swing bridge which

---

* Repealed by Laws of 1924, chap. 88. See Conservation Law, § 718.— [REP.

had been left out of position during the night. The opinion (p. 215) states: " The State had simply built a tow-path and bridge upon its own land for the use of persons navigating its canals.   *   *   *   No enticement or allurement to people generally to pass over the bridge was held out, except such as any bridge upon private lands holds out, and no one had a right to suppose from the mere existence of a tow-path bridge, that the State undertook the duty of keeping it in place at all times for the use of the general public."

The obligation of the State as to Enfield Park was that of a trustee for the benefit of the public with the duty to make the improvements therein in a manner reasonably consistent with the safety of visitors. The State was liable for bodily harm caused to visitors if the artificial condition was not made reasonably safe and if a warning was not given of the dangerous condition and of the risk involved. (Restatement of the Law of Torts, § 342.)  The Court of Appeals (272 N. Y. 420) and this court (245 App. Div. 401) have applied this rule in *Kittle* v. *State of New York*. There the liability was predicated upon the failure to warn or to erect a barrier.   Decedent fell from a walk which she had reached by climbing thirty-five feet down a perpendicular ladder placed in a hole or fissure between ledges of rock to " a steep, rough and rocky slope " which led to the unguarded walk.  In the *Kittle* case the danger was more obvious than in this case.  There the visitor saw a ladder by which descent could be made into a hole or fissure.  This gave more warning of the risk of the venture than here where the steps, the look-out, the barrier at the edge all indicated preparation for visitors with nothing to warn of a lack of reasonable safeguards, like a handrail or a barrier of reasonable height.

In determining whether the State was at fault in the construction of the steps, look-out and barrier, consideration should be given to the uneven and littered condition of the steps, the abrupt descent of seven and one-half feet while traveling ten (a seventy-five per cent grade), the height of the riser from the floor of the ledge to the first tread (nineteen inches), the narrow limits of the ledge (two and one-half feet or less), with a barrier only fifteen to eighteen inches high, its top below the level of the last stair in the descent, which furnished little or no protection beyond marking the outline of the ledge.

The State was required to exercise reasonable care and, in determining the care which would be reasonable, consideration was to be given as to the imminence of the danger and the fatal results to be apprehended from a fall.   Barriers are required to protect those traveling within the space prepared and offered for that purpose against danger in such close proximity thereto as to make

traveling perilous. (*Ferro* v. *Sinsheimer Estate, Inc.*, 256 N. Y. 398; *Haefeli* v. *Woodrich Engineering Co.*, 255 id. 442; *Flansburg* v. *Town of Elbridge*, 205 id. 423; *Nicholson* v. *Town of Stillwater*, 208 id. 203.)

At the entrance to the park and half a mile from the look-out a sign had been erected admonishing: " Proceed with care. You pass through this park at your own risk." The concluding sentence is not a truthful description of the right of a visitor or the liability of the State. The sign did not change the obligation of the State or relieve it from the duty to warn at a place of unusual danger or to. erect barriers and handrails where a reasonable regard for the safety· of a visitor required.

The State constructed the steps with the expectation that they would be used by the public and thereby extended an invitation to go to the look-out. This gave rise to an obligation to make the way reasonably safe. The necessity for a barrier at the edge of the look-out had been recognized, but the wall not higher than a person's knee was inadequate. Decedent assumed such risks as remained after the State had exercised reasonable care for her safety. I do not subscribe to the theory expressed in the prevailing opinion that claimant's intestate went through this park at her own risk, and assumed all dangers, except those incident to an intentional injury.

There is little, if any, dispute as to the facts proven. This dissent involves only a question of law. The majority find from the undisputed facts that claimant's intestate was a bare licensee. I believe that she was an invitee and that the State was required to exercise reasonable care for her safety. That there was failure in this regard, and that she did not assume the risk which arose from the failure, and thus that the State did not establish contributory negligence. (Decedent Estate Law, § 131.)

I favor a reversal.

HEFFERNAN, J., concurs.

Judgment affirmed.