FRED E. TRIMBLE, as Administrator, etc., of RUTH H. TRIMBLE, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 24991.)

Court of Claims, March 27, 1941.

*Austin W. Erwin* [*Mark F. Welsh* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General,* of counsel], for the defendant.

DYE, J. This claim is brought by the administrator of the estate of Ruth H. Trimble, deceased, to recover damages from the State of New York for the death of claimant's intestate, resulting from injuries suffered by her in Stony Brook Park on the afternoon of May 17, 1936. The claim is for medical and hospital bills, funeral expenses and loss of services and prospective earnings. It is claimed that the State, through its agency, The Finger Lakes Park Commission, was negligent in the operation, maintenance and supervision of Stony Brook Park.

The State, in the maintenance of the park, is not exercising a governmental function, and the duty devolved upon it is to

exercise ordinary care. (See *Dietrich* v. *Palisades Interstate Park Commission*, 114 Misc. 425.) Immunity has been waived under section 12-a of the former Court of Claims Act.

Stony Brook Park consists of about 600 acres, through which passes Stony Brook creek, bounded on either side by high rugged banks and almost perpendicular cliffs which form a scenic gorge. The park also embraces within its area the usual complement of playgrounds, picnic areas, a swimming pool and other recreational facilities, and parking areas, one of which was restricted and a fee of twenty-five cents was charged for the privilege of parking automobiles therein. In harmony with State policy, the park is maintained in as nearly an undisturbed, natural condition as possible. It is a public park for which no admission fee is charged.

In July, 1935, the Stony Brook Park area had been subjected to a severe storm, which caused flood conditions in the gorge of such violence that extensive damage had been done in the way of destruction of trailways, washing out of footbridges, the uprooting of trees, causing earth and rock slides and, when the water subsided, there remained in the creek bottom and along the base of the high banks and cliffs a miscellaneous deposit of flood debris which obliterated the trail, and any one passing along its route was compelled to pass along, climb up and down and over the accumulated destruction of trees, boulders, dirt and miscellaneous flood rubbish. Following this, the State had erected warning signs on boards approximately three feet by two feet on which was printed in letters about four inches high the legend " Gorge Trail — Dangerous. Proceed at Your Own Risk." One of these signs was placed at the entrance of the gorge trail in a spot plainly visible to persons passing through the entrance and, further down and on the pathway leading into the gorge, was a second sign similar to the first fastened to a wooden horse, so placed near the center of the pathway that any persons using the trail must have walked around it in order to get by.

The claimant's intestate, a healthy, athletic girl of twenty-one years, and employed as a public school teacher, visited Stony Brook Park on the afternoon of Sunday, May 17, 1936, in company with her fiance. After parking their automobile in the restricted area, they proceeded on foot to the entrance of the gorge, passing the signs which were plainly visible and were seen by the escort of the deceased and others who passed that way. They proceeded into the gorge, climbing over and around the debris which clogged and obstructed the route of the former trailway until they reached a point about one-half mile from the entrance and near the foot of a waterfall. At this point, they seated themselves on a log about

fifteen to twenty feet from the base of the westerly cliff, with their backs toward the cliff and facing the waterfall. The cliff at this point was about one hundred and fifty feet high and almost perpendicular, consisting of an irregular stone and shale formation. While so seated, the deceased, without warning, suddenly slumped forward. Her companion rendered assistance and upon examination found a large puncture hole in her back, which was bleeding profusely. Her legs became numb and paralyzed. She had, without doubt, been struck by a sharp, hard object, the identity of which was not established. It was contended that it must have been a piece of stone. Neither was it at all certain, in the event it was a stone, whence it had originated and how it happened to strike the deceased.

Such changes as had been wrought in the gorge by the flood of 1935 were plainly visible and apparent to all who passed that way. Ample provision had been made by the park authorities for the entertainment and convenience of visitors. Picnic areas, playgrounds and parking facilities were provided. Visitors entering and using the gorge of necessity had to pass by and around the warning signs and did so voluntarily and for their own amusement and recreation. The natural characteristics of the gorge and the destruction and debris deposited therein by the flood created a condition which only the active, alert and athletic person would attempt to negotiate.

It was not, however, the destruction of the pathway and the failure to remove the flood debris that occasioned the injuries. It was some hard object, which came from some unidentified source and struck the deceased in the back. Did this circumstance constitute a trap or a hidden danger which imposed upon the State the duty to exercise special vigilance in warning users of the gorge, and was it of such a nature as to require special precautions on the part of the State? We think not. In arriving at this conclusion we have had in mind that the burden is upon the claimant to show by a fair preponderance of the evidence that the accident was caused by the fault of the State. The test of actionable negligence is not what could have been done to prevent a particular accident, but what a reasonably prudent and careful person would have done under the circumstances in the discharge of his duty to the injured party. Failure to guard against a remote possibility of accident or one which could not, in the exercise of ordinary care, be foreseen, does not constitute negligence.

The rule of *Shaknis* v. *State of New York* (251 App. Div. 767, affirmed in *Doulin* v. *State of New York*, 277 N. Y. 558), to the effect that it is the duty of the State to maintain a public thoroughfare

which passes through State-owned property in a reasonably safe condition for travel, and to construct such barriers as are necessary to prevent rock from falling on travelers using the highway, is cited as a controlling precedent in the instant case. We cannot agree that it should be given any such broad authority. While the decision in the *Shaknis* case was eminently correct as applied to the facts in that particular case, the facts in the instant case present an entirely different problem. A main State highway, apparently safe and open for travel, passing through State property, should not be classed in the same category as a natural gorge in a public park whose pathways and footbridges have been destroyed, and earth, rock slides and flood debris deposited indiscriminately therein, and in such quantities as to obliterate the rustic trail at the entrance to which signs had been placed warning of the danger and that users proceeded at their own risk.

The physical condition of the gorge and the destructive effect of the flood of 1935 were apparent to all who passed that way, so much so that it reiterated the admonition and warning already posted on the signs erected by the park authorities at its entrance. Thoughtlessly disregarding the signs, the physical conditions and existing circumstances constituted a voluntary assumption by the claimant's intestate of the risks and hazards involved therein. This is particularly so when the age, occupation and perception of the deceased are taken into consideration. She voluntarily exposed herself to whatever danger there was, and from whatsoever cause, and assumed the risk incident thereto.

The claim herein should be dismissed upon the merits.

Let judgment be entered accordingly.

BARRETT, P. J., concurs.