GEORGE T. BROWN, as Administrator, etc., of THOMAS WILLIAM BROWN, Deceased, Claimant, v. THE STATE OF NEW YORK, Defendant.

(Claim No. 25855.)

Court of Claims, July 9, 1941.

*John J. Brown* [*Leonard Finkelstein* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J.  On October 23, 1938, claimant's intestate Thomas William Brown, aged eighteen years, was enrolled at a camp of the Civilian Conservation Corps near the Robert H. Treman State Park.  It was a Sunday afternoon and claimant's intestate, in company with four other enrollees, visited the park.  All of the boys were from the city of Buffalo, had been at the camp about one week or less, and this was the first occasion on which any of them had been in the park.  They crossed a bridge over Enfield creek channel and then ascended by various pathways and by a stairway of about 125 steps to a natural rock ledge at the foot of a vertical rock cliff.  At this point there is a " switchback " to the right and the stairway turns at a sharp angle to the left and goes up to a lookout point at a higher elevation.  The " switchback " is formed by two man-made steps which are protected by a parapet wall.  In the words of the general superintendent of the park and the man who, as landscape architect, designed the park, this location " is an invitation to rest " because " a great many people reach that point exhausted " and " many people step out on the ledge."  This area is presented before the court by photographic Exhibit 11.

Beyond the two steps the ledge extends for a distance of thirty to fifty feet.  It is clear of foliage and is well trodden.  The visitors in whom we are interested proceeded along this ledge and next encountered an object which is depicted on claimant's photographic Exhibit 10 and on State's photographic Exhibit C.  (It must be observed at this point that the legends or description appearing in ink on the reverse side of the photographic Exhibit C and the photographic Exhibits B and D were not received and cannot be considered in evidence here.)  Some or all of them mounted this object and proceeded beyond it.  Staebell, one of them, who had been in the lead, stopped to tie his shoelace, and Brown went ahead and came to the ledge.  The others were behind

Staebell. The next thing that happened some earth gave way under Brown, he tried to hold on to shrubs and foliage but fell into the gorge below and was killed.

The usual two questions present themselves: 1. Was the State negligent? 2. Was the decedent guilty of contributory negligence? The decedent and the others were invitees of the State and the State was bound to use reasonable care for their protection. The invitation by the State was extended with cordiality, it is certain, at least to that point where the disputed object appeared across the visitor's path. There is some suggestion in the testimony that an officer or officers of the Civilian Conservation Corps camp warned the boys, including the claimant's intestate, not to visit the park without a guide or remarked to them that the government did not have money for flowers. It is also pointed out that near the entrance to the park was a sign which asked the public among other things to " observe the following suggestions: Proceed with care. You pass through this park at your own risk." None of the boys who testified admitted that he saw the sign but the park superintendent testified that they must have passed it in order to reach the pathways and the stairway which they ascended. Concededly there were no other signs of warning along Brown's path which he could have seen or observed prior to his accident. Whatever was said to him by the Civilian Conservation Corps officer and whether or not he saw and read the sign have, in our opinion, no effect upon the result herein. The determination of this case must be narrowed to the following: Was the disputed object a barrier or protective device or warning of such nature that under the circumstances it can be said that the State used reasonable care? And, if the State did not use reasonable care, were the dangers so obvious that they were in and of themselves sufficient warning?

The object in question was man made. It consisted of a dry wall of limestone rock taken from the cliff and laid up irregularly across the path. To reach it from the two steps appearing in the photographic Exhibit 11 which, to repeat, was described " as an invitation to rest " one proceeded directly along a beaten path The surviving visitors who testified described the object as " steps " (witnesses Crawford and Covert) and the witness Harrigan who visited the scene after the accident, called it a " step " and said it was about one and one-half feet high. The park superintendent said it was twenty-four to thirty inches high and was a " wall " and the implication of his testimony is that it was intended as an obstruction, a barrier, to the path. Perhaps a more accurate description would be to call it a " stile." The State's investigator,

Kane, says that he measured it and that it was thirty-six inches high. Whatever its height, it did not block the five athletic young men of the Civilian Conservation Corps and the great weight of evidence, photographic and oral, is that they were not the first to have mounted it nor were theirs the first feet to have trod the ledge beyond.

It is appreciated by the court and by all nature loving citizens that in adapting wild lands to State parks it is the policy of the State commissions to preserve the natural scenic beauty of the area so far as it is possible to do so. However, in this instance, it would have been simple to have built a wall of such height and of such precipitate elevation that it would have been a plain warning to the visitors who had been enticed to proceed to its face that beyond it they should not go, that beyond it were the dangers which the park superintendent testified he knew existed. We believe that the arts of landscape architecture could have devised a wall which would have been a barrier without marring the beauty of the spot.

With these considerations, and having in mind the fair preponderance of evidence, we find the State negligent on October 23, 1938, in respect to its visitor, Thomas William Brown.

There remains the question of the boy's contributory negligence. The answer to this, we think, has already been given. The path which he had been following appeared to continue above and beyond the wall. A sheer cliff extended above and below him but he had already ascended through similar surroundings with safety. He went farther than he should have gone but the State of New York continued to beckon or at least allowed him to proceed.

The burden of establishing contributory negligence is upon the defense. It has not been met. It is insufficient to say that the danger was obvious. The whole ascent was obviously dangerous and the State should have indicated with certainty that point beyond which it was reasonably unsafe to venture. We find him free from contributory negligence.

We think the claimant's intestate was not so much led into a trap as was the decedent in the case of *Kittle* v. *State of New York* (272 N. Y. 420). Nevertheless the danger was hidden, the risk was not perfectly evident as it was in the case of *Griffin* v. *State of New York* (250 App. Div. 244). And the decedent Brown was not the victim of a wholly unforeseen and unexplainable incident as was the decedent in the case of *Trimble* v. *State of New York* (176 Misc. 70).

The assessment of damages presents a very difficult question. The young man was eighteen years of age and had a life expectancy

of 43.53 years and he had surviving him a father aged forty-two years and a mother aged forty-three years. He was earning thirty dollars monthly on a six months' enrollment in the Civilian Conservation Corps, from which sum twenty-two dollars was to be taken and paid to his parents monthly. He had completed seventh grade in public school. No previous earning capacity appears in the record. We reach the conclusion that an award of $12,000 plus the funeral expenses should be made. We think this amount fair under the circumstances and in accord with other awards we have made. (See *Kittle* v. *State of New York, supra; Goldstein* v. *State of New York*, 175 Misc. 114.)