Alexander Del Giorno, J.
This is an action for personal injuries sustained by the claimants, Robert Burkart and Victor Payette, in Thacher State Park, a State facility, and for medical expenses and loss of services by their respective parents.
On June 9, 1962, Victor Payette was 16 years of age, and Robert Burkart was 15 years of age. On that day, they and other boys were treated by their priest to a picnic in Thacher State Park, which is some 18 miles from Albany. The priest, the young claimants, and a few other boys arrived ahead of a larger group yet to come, chose their picnic tables and then played softball in the picnic grounds. After the game the claimants advised the priest that they were going for a walk in the woods surrounding the cleared picnic area, which woods were to the east thereof. The priest cautioned them to be careful in their walk through the woods and not to go too far.
I feel that we may better understand the complication of events by first describing the area of the park directly involved. Thacher State Park extends for a distance of some 3 miles on both sides of Route 157. The much higher and more mountain-our area is to the west of Route 157 while the subject area is to the east of Route 157. The park generally has been left in its pristine state. The picnic area with which we are concerned, is known as Stone Lot Picnic Area, and it is almost at the very south end of the park where there are no other man-made attractions. The main picnic area may be described as being in the shape of a goblet as it faces Route 157. There is a smaller picnic area contained in what would be the stem of the goblet from which there commences a trail or path which is some 3 feet wide which extends generally easterly until it reaches a point where it runs in a general northerly direction and parallel with the cliffs which form the easterly boundary of the park.
*914 The claimants upon leaving the picnic area entered through the stem of the goblet where they picked up the trail. They followed the trail which led towards the cliff area. Both claimants testified that they had been to Thacher State Park once or twice before, but their visit was in the area containing the swimming pool, games area, built-up trails, all of which are supervised and located about one and one-half miles to the north. Upon those visits they had seen the cliffs. As a matter of fact they testified that they had seen the cliffs, which are perpendicular and bereft of vegetation, that very morning as they were traveling along Route 157 towards the picnic area. They testified, however, that they did not associate the cliffs with the picnic area or that they realized their specific location in reference thereto.
The parties consented that the court make its own inspection of the area involved. When the court visited the area on July 7, 1966, it noticed a large sign at the entrance of the picnic area and another within the picnic area which indicated that the State offered picnic accommodations, hiking, swimming and games, and that the trail closed in the late afternoon. The court noticed that the picnic area has a finished parking area, many tables, and cooking arrangements. As the court entered the area we designate as the stem of the goblet, it noticed the path which is a well-trampled trail that courses between trees without any obstructions other than the rough terrain, small outcroppings of roots, twigs and small stones. The view ahead, at eye level, was unobstructed for perhaps 150 feet, for in the wilderness the branches bearing foliage are usually above eye level. However, the foliage was thick and nowhere could the court see the top of the cliffs or even realize that there was a void above the cliffs.
Claimants’ Exhibit 17 and State’s Exhibit X, which are the surveys of the area made by both sides, indicate the existence of the trail or path between trees.
Returning to the testimony, both claimants testified that they walked along the trail, zigzagged about the woods, and also placed trail markers along the way. It was their testimony that some 350 feet from the picnic area and while walking along the trail which in that area was generally along the top of a steep slope which led to the cliffs, that the ground gave way and one after the other they tumbled down towards the top of the cliffs over which the earthen slope still continued to the end of the cliffs, and then went over the cliff and fell perpendicularly some 60 feet onto soft ground covered with layers of dead leaves, with the resulting injuries described in the claimants’ findings of fact.
*915 The claimants testified that there was no tree in their way to stop the fall, and that they grabbed at grass and other vegetation, which, however, came right out of the ground and did not hold them back. It may be observed at the location where the ground gave way, that the ground not only sloped sharply downward towards the cliffs, but also from south to north. This configuration of the ground did not help the boys for it formed sort of a wide funnel which led towards the cliffs. It was apparent to the court upon a view of the topography that a movement of gravel or loosening of dirt underfoot in that location would be sufficient to cause a fall which could not end but at the bottom of the cliffs.
At the trial, the trooper who rescued Burkart, testifying for the State, alleged that Payette told him that the two boys were running along the edge of the cliff when they fell. The court’s conclusion from its inspection of the area and a study of claimants’ Exhibit 20, which is an aerial photo taken by the State, was that it would be impossible even for boys to run along the edge of the cliff. The trooper might have meant the edge to be at the location where the ground gave way; in other words, close to the area of the cliffs.
The confusion created by the testimony herein is compounded by the fact that there were no eyewitnesses to the accident. It must be stated herein that the court was very favorably impressed by the sincerity of the testimony given by the two claimants. The court finds no contradiction that these claimants fell in the general area of the so-called exposed root (claimants’ Exhibit 24, Point 5). The week after the accident the claimant, Payette, pointed out the location to the surveyor who drew claimants’ Exhibit 17, and his lawyer. Sometime around October, 1962, Burkart also pointed out the area. The question is — were the boys running in the area at the time? On the basis of the testimony offered, the court concludes that they were walking along the trail. The trooper who came to the scene and was one of those who rescued Burkart, that same afternoon made an entry in the official blotter kept at the police barracks which stated that Payette told him the two claimants were walking. The trooper, one month and 7 days later, July 16,1962, made out an accident report. In that report he wrote that the boys were running along the edge of the cliff. He continued with his later recollection of what the boys presumably told him by testifying that Payette told him that they were running along the edge of the cliff. The court is of the opinion that the trooper was in error when he made his accident report which he tried to reinforce when he testified at the trial.
*916 Payette, who, in spite of his severe injuries, managed to walk down the hill below the cliffs into the neighboring farmer’s field, told the trooper that he had crossed a stream when he walked from the scene of the fall. The testimony indicates that the stream, which is usually dry, is the boundary of the park at its south end, and since Payette was walking in a southerly direction, it would indicate that he had fallen within the State property as he testified at the trial. The testimony offered by the State would indicate that Burkart was found some 200 feet south of the stream boundary or on private land. Even this assertion by the State presents a confused picture. Such testimony, however, presented orally or by exhibits, is the best the State can do under these circumstances to present its conception as to how the accident happened. The direct statement of the claimants as to where they fell from remains unimpeached. The rest is circumstantial and not so impressive.
Burkart was very seriously injured. , He was dazed and suffered agonizing pains. Assuming, arguendo, that he was on private land when found, who can say whether in his dazed and excruciatingly painful condition that he did not stumble away towards the south until he could no longer continue, when he propped himself against the tree where he was found. The court speculates on this point for the reason that the State went through a great deal of trouble and expense to prove that the two claimants had fallen outside of a State park, which, nevertheless, in my opinion, have not confirmed its theory as to how the accident occurred.
There is only one point in the whole story which appears to the court to be uncontradicted, namely — where did the claimants fall? The court finds no contradiction of the claimants’ story as to how the accident occurred as well as its location. As to the rest, when shorn of the many contradicting and speculative facets offered at the trial, the court believes the circumstances vindicate the claimants’ story of the accident.
To the south of the State property there is a continuation of the same wooded area. It is impossible to tell where the State property ends and the private property starts.
One can very well wander from the park land into the private wooded land to the south and be totally unaware of that fact. There are no signs, no fences, no markers, no indication within the park of the limits of the State land. The trail, however, was on State land as above stated.
The writer accepts the fact that this park is very beautiful and virginal in its aspects, as it should be. However, the State should indicate where the .limit of safety is, for nowhere has *917 this court encountered a more deceptive park with reference to the inherent danger than here. If no barriers may be erected, at least signs should be placed therein warning of the danger presented by the cliffs.
The swimming pool, games area and the trail actually laid out by the State are in another area of the park, one and one-half miles aAvay, and invisible from the subject picnic area. These are located in a flat area which is Avell protected, watched over and clearly defined (claimants’ Exhibit 18).
The court also viewed the cliffs and the area of the fall from the Beech farm AA2hich is beloAV or east of the cliffs Avhich are themselves above a steep hilly terrain. Even from the farm, and with the aid of binoculars, it Avas impossible to detect where the State boundary was in relation to the private land boundary.
The trooper testified that Payette told him they slipped and fell 100 feet. That 100 feet is not the distance from the edge of the cliff doAvn. That vertical height of the cliff is 50 feet or 60 feet and the balance is just about the distance from A, the location of the exposed root, to B, the edge of the cliff as shown on claimants’ Exhibit 17, and is consistent Avith the claimants’ story of the location of their fall.
The court is of the opinion that the íavo boys accepted the path, as I Avould, as an invitation by the State to those invited to picnic there, to use the park along the trail. They Avere thus walking and exploring, as is natural with those of their age, in this virgin forest unaAvare of the cliffs at the base of the slope or the loose composition of the soil along the slope.
The court finds that the proximate cause of their fall was the loosening of gravel, plus the fact that the State failed in any manner to Avarn them of their danger to which it invited them by virtue of its furnishing a picnic area Avith a sign inviting them to hike in its woods by using an available trail.
This case is no different than the case of Kittle v. State of New York (245 App. Div. 401). In that case the State invited people to the point Avhere the danger lay by means of signs within the boundaries of Thaeher State Park which indicated the route to the crevice, bear path and caves to which the path led, but there were no signs indicating danger posted at any place and nothing to give Avarning of the steep, rocky path from the foot of the ladder at the base of the crevice at Avhich there Avas a sheer drop of 50 feet. In this case, the path or trail indicated the route to be followed but there were no signs posted at any place warning of the danger of loose earth and the adjacent cliffs. As in that case, this court finds that the failure of the State to warn, together with the lack of any guardrails *918 or safety measures, constituted negligence and created liability on the part of the State, and this whether the two claimants were to be classified as invitees or licensees.
To be sure, the State is not an insurer of those who make use of its park facilities. The law requires that it shall exercise reasonable care in the maintenance of its parks and in the supervision of their use by the public. The State is not required to maintain its parks in such condition that its patrons may wander at will and without care over each and every portion thereof. However, while a visitor is required by the law to accept the premises as they are, the law is specific that he accepts it subject to notice of reasonably unforeseeable danger involving unreasonable risk, of which the owner has knowledge. (Pope v. State of New York, 198 Misc. 31, affd. 277 App. Div. 1157; La Rocco v. State of New York, 7 Misc 2d 161, affd. 8 A D 2d 644; Brown v. State of New York, 176 Misc. 748, affd. 263 App. Div. 1045; Malvaso v. State of New York, 15 Misc 2d 585, affd. 10 A D 2d 663.)
The court finds the claimants free from contributory negligence.
In preparation for the trial, the State took measurements, made surveys, took aerial photographs; put down the slope long strips of cloth to locate the scene of the accident in their photos. The court found all this unconvincing. It seems to me to be a strenuous effort to try to wiggle its way out of its responsibility by providing much fire but little light. Perhaps that money could have been spent to place signs in the area warning people of the danger lurking there or perhaps install therein some kind of barrier to avoid any other such incident. However, the Superintendent ,of the Park, who knew very little about the subject area, stated flatly that there was no need for such warning signs or barrier. The court does not agree. The danger is there more so during the foliage season for the reason that the trees are all deciduous trees which prevent any clear view of the trouble ahead for the person unacquainted with the area.
Fortunately both claimants have made splendid recoveries from their injuries which are set out in the claimants’ findings of fact.
The court awards to the claimant, Robert Burkart, for his injuries and suffering, the sum of $10,000, and to Charles W. Burkart, his father, the sum of $3,637.55 for the hospital and medical expenses including $1,500 for the loss of services of his son.
*919 The court awards to the claimant, Victor Payette, for his injuries and suffering, the sum of $4,000 for his injuries, and $681.85 to claimant, Josephine Payette, his mother, for her medical expenses including $500 for the loss of services of her son.