JOSEPH FERRO, an Infant, by THEODORE FERRO, His Guardian ad Litem, Appellant, *v.* LEOPOLD SINSHEIMER ESTATE, INC., Respondent.

(Argued May 13, 1931; decided June 2, 1931.)

*Gilbert D. Steiner* for appellant. Plaintiff's claim is not within the purview of the Workmen's Compensation Act; he was not an employee of defendant; no relationship of employer and employee was created and none was contemplated by the circumstances under which he proceeded to clean the elevator machinery. (*Anderson* v. *Hanling*, 214 App. Div. 826; *Noreen* v. *Vogel & Bros., Inc.*, 231 N. Y. 317; *Matter of Mandatto* v. *Hudson Shoring Co.*, 190 App. Div. 71; 229 N. Y. 624.)

*Robert H. Charlton, Michael F. Dee* and *William A. Earl* for respondent. Plaintiff's employment by defendant was a question of fact and there is ample proof to sustain the determination of the court, necessarily based upon the finding of such employment. (*Lipari* v. *Bush Terminal Co.*, 193 App. Div. 309; *Marks* v. *Rochester Ry. Co.*, 146 N. Y. 181; *Geibel* v. *Elwell*, 19 App. Div. 285; *Meyers* v. *Hines*, 199 App. Div. 594; *Dashnau* v. *City of Oswego*, 204 App. Div. 189.)

HUBBS, J. The defendant is a domestic corporation. On November 11th, 1925, it owned a ten-story loft building situate at No. 714 Broadway, New York city, which was occupied by a number of tenants. Aaron Levy for many years had been the superintendent of the building. He had full charge and control and hired the help which he needed in operating it. It contained two elevators. At that time the infant plaintiff was between thirteen and fourteen years of age. For some time he had been helping his brother who was engaged in the trucking business. It had been his practice to go to the premises after school and gather up packages for his brother. On rainy days, Levy, the superintendent, permitted him to store his packages in the hallway until his brother called for them.

On the day in question he went to the building after he left school. The superintendent asked him to go to a store and get a can of kerosene oil. He got the oil and

returned with it and the superintendent gave him the change, nine cents. He then asked the plaintiff to go with him to the top of the building and clean an elevator cable. He took the plaintiff on an elevator to a small room on the top of the structure which contained machinery and the cable which was to be cleaned. He instructed plaintiff to hold a cloth saturated with kerosene around the cable so that the cable would pass through the saturated cloth as it moved up and down. Before taking the plaintiff into the room he ordered the elevatorman to stop the elevator. After instructing plaintiff how to hold the cloth, he left the room and directed the elevatorman to start the elevator. When the elevator started, the cable moved through the cloth held in plaintiff's hand. In about two minutes after the elevator started, it " stopped and came up again " and caught the plaintiff's hand causing the injury to recover damages for which this action was brought.

Prior to that time the plaintiff had occasionally done errands for the superintendent for which he sometimes received a few cents. At the close of the evidence the learned trial justice directed a verdict for the defendant upon the ground that " The plaintiff has an exclusive remedy under the provisions of the Workmen's Compensation Act." The judgment of the Trial Term has been affirmed by the Appellate Division.

The superintendent testified that he received $2,700 a year from the defendant for his services. From that amount he paid the elevator operator and others who did work for him about the building. He had known the infant plaintiff for six months before the accident during which time the plaintiff had been gathering packages for his brother, the expressman. During that period the plaintiff had done errands for the superintendent, and small odd jobs two or three times a month. For such services the superintendent gave him whatever he thought he ought to, out of his own money. Sometimes the

plaintiff would go and get a package of cigarettes, and " little favors like that " and when he came back the superintendent would give him a little money, a mere gratuity. Sometimes he would sweep down the stairs and dust for which he was paid whatever amount the superintendent desired to give him. There was never an agreement in advance about work or the amount to be paid.

At the time of his injury the plaintiff was not an employee within the purview of the Workmen's Compensation Act (Cons. Laws, ch. 67). The circumstances disclose that the relationship of employer and employee was not contemplated or established. The payment of small sums as gratuities or a promise to pay the same did not constitute the payment of wages as defined by the act. Section 2, subdivision 9, of the act defines wages as follows: " ' Wages ' means the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." There was no " money rate " established or contemplated or " contract of hiring " in force.

Gratuities or tips received by employees cannot be considered as wages, unless so understood by the parties in making the contract of employment. (*Anderson* v. *Horling*, 214 App. Div. 826.)

Subdivision 4 of section 2 of the act reads: " ' Employee ' means a person engaged in one of the occupations enumerated in Section Three or who is in the service of an employer."

Group 19 of section 3 refers to " contract of hire." The act as a whole connotes the necessity of a relationship between the parties more substantial and formal than existed in this case before the relationship of employer and employee may be held to exist within the letter or spirit of the act.

The words " employer " and " employee " are used in

the act in the common-law understanding of those words. They denote a contractual relation, not a mere casual voluntary rendition of a slight service or favor rewarded by a gratuity. (*Matter of Mandatto* v. *Hudson Shoring Co.*, 190 App. Div. 71; reversed on dissenting opinion of KELLOGG, J., 229 N. Y. 624.)

Although the plaintiff was not an " employee " within the meaning of the act, he was rightfully upon the premises and in the room where injured. The superintendent was the defendant corporation for the purposes of this action. He had general authority and full control of the building. He was authorized to clean the cables or to cause another to do it for him. What he did to induce the plaintiff to undertake to hold the cloth while the cable passed through it, the defendant did through its agent. The plaintiff was invited or induced by the superintendent to go into a place of danger and undertake to do a dangerous act, at least a jury might so find. Under the circumstances if the act of the superintendent was the negligent cause of plaintiff's injury, the defendant is liable therefor as the superintendent was acting within the scope of his authority.

The American Law Institute, Restatement of the Law of Torts, Tentative Draft No. 4, section 211, reads: " Liability for Activities Dangerous to Licensees. A possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein." It cannot be assumed that the infant plaintiff knew " of the risk involved."

In this case it is not necessary to go as far as the rule stated, as the plaintiff was upon the premises not as a bare licensee or general invitee. He was there at the request of the superintendent to perform an act for the

benefit of the defendant and not for his own convenience. (*Sweeny* v. *Old Colony & Newport R. R. Co.*, 10 Allen, 368.) There was active negligence on the part of the superintendent in inducing the infant plaintiff to enter upon a dangerous undertaking without warning him of the danger. (*Barrett* v. *Brooklyn Heights R. R. Co.*, 188 App. Div. 109; affd., 231 N. Y. 605.)

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.