JAMES PENNER, as Administrator of the Estate of EDWARD S. PENNER, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

### Claim No. 19048.

Court of Claims, May 19, 1932.

*Pratt & Fowler*, for the claimant.

*John J. Bennett, Jr., Attorney-General* [*James H. Glavin, Jr.,* and *Burns F. Barford, Deputy Assistants Attorney-General*], for the State of New York.

RYAN, J. This claim is filed pursuant to chapter 740 of the Laws of 1931. For many years the State of New York had maintained in the tower of the armory building at Utica a ladderlike device as a means of ascent to the tower roof. Above the roof extended a mast or flagpole. Each morning the flag was raised, each evening lowered. To reach. the place where the ropes or halyard could be handled one had to go to the top floor of the armory and enter a small room. Here one climbed a perpendicular ladder attached to the wall and passed through the ceiling into the tower proper where he came upon the so-called ladder. It was made of two parallel timbers each two by eight inches, placed approximately two feet two inches apart. Between these were wooden treads eight inches broad and an inch and a quarter in thickness rising one above the other at intervals of one foot three inches. This ladder was twenty-two feet long and was set at an angle of seventy degrees. The treads were parallel to the floor and as one ascended his body hung out from the ladder. No guard rails were attached to it. The dimensions, arrangement and nature of the timbers and treads made it difficult to grip the ladder or grasp it firmly.

To take down the flag it was necessary to climb to the top of the ladder, raise a scuttle or hatch in the roof, go through the opening, lower the flag from the pole, take it off the halyard, return the halyard to the pole, bring the flag through the hatchway and hang it on a hook underneath and then descend.

On May 12, 1929, the task of lowering the flag was the duty of one Clifford, a paid employee of the State working as the engineer at the armory. On that day Edward S. Penner, aged eighteen years, claimant's intestate, was at the armory. He was, by permission of the officer commanding the company, wearing a uniform which was company property. That is, the uniform was one which had been purchased from company funds and not the regulation clothing supplied to the militia by the Federal government. Penner had previously and on or about April 8, 1929, signed formal application

for enlistment in the National Guard, had passed the physical examination and was awaiting a vacancy in the guard ranks. He had not yet been ordered to drill nor assigned to any strictly military duty. Nevertheless, it appears that he had been welcome at the armory, was there frequently, had been permitted access to any part of the building. He had either voluntarily and with the acquiescence of the officers in charge or by their request been in the habit of performing various tasks in and about the armory. The officer commanding the company had permitted Penner to go to work at the construction of a radio broadcasting set for the company and had encouraged him by applying company funds to the purchase of materials and parts for the apparatus.

On the day in question Penner was requested by Clifford to take down the flag. Clifford testified to the transaction as follows: "I said, 'Penner, was you ever up to the top?' He said, 'Yes, several times.' I says to him, I met him in the hall, and I says, 'Penner, was you ever up on the top?' and he says 'Yes, several times,' and I says, 'Do you want to go up and take the flag down for me?' and he says he would be glad to; and I gave him the keys to go up."

Twenty minutes later Clifford wanted his keys for some purpose and recalled the conversation. He went up to the tower and found Penner lying at the bottom of the ladder unconscious. He died a few hours later in a hospital and the State concedes that his death was due to injuries suffered in a fall from the ladder.

The Attorney-General urges that the deceased was not obligated to go to the tower to take down the flag; that the State's duty towards the deceased was merely to refrain from gross, willful and active negligence; that Clifford had no authority over deceased and that the duty of taking down the flag, being his own as an employee of the State he could not delegate it to a third person; that the State is not liable for injuries suffered by a third person when he undertook to do Clifford's work.

Unquestionably the State had notice of the unsafe condition of the ladder which had remained unchanged over a period of many years. It was reasonably to be expected that members of the National Guard would have occasion to go to the tower. If they did they had a right to rely on the ladder being a safe device for the purpose for which it was intended. Penner must be considered in no different light than a fully enlisted member of the guard. He was on the waiting list and eager and willing to do anything requested of him. He did not distinguish between a military command and a request or instruction by a civilian employee of the armory.

He was not a trespasser, intruder, mere volunteer, or bare licensee. (*Birch* v. *City of New York*, 190 N. Y. 397, 403, quoting 1 Thomp. Neg. § 945.) He was in the armory at the instance and request of the State of New York through its National Guard officers who sought his enlistment, gave him access to the building and availed themselves of his time, skill and labor for the benefit of the militia company.

At the moment Clifford was in control of the building. He had authority to take down the flag or cause another to do it for him. The maintenance of the unsafe ladder was the negligent act of the State of New York. Clifford's request to Penner to take down the flag was the request of the State of New York and for its benefit. Claimant's intestate was invited or induced by Clifford, acting for the State of New York, to go into a place of danger and undertake to do a dangerous act. (*Ferro* v. *Sinsheimer Estate, Inc.*, 256 N. Y. 398.) To paraphrase from the learned opinion of Mr. Justice HUBBS therein: Penner was in the tower at the request of the engineer to perform an act for the benefit of the defendant and not for his own convenience. There was active negligence on the part of the engineer in inducing claimant's intestate to enter upon a dangerous undertaking without warning him of the danger.

The claimant is entitled to an award.

BARRETT, P. J. (dissenting). I dissent from the decision rendered in this claim by Judges RYAN and ACKERSON upon the ground that the sole duty resting upon the State toward claimant's intestate was to refrain from active, gross or willful negligence, and no such negligence appearing the claim should have been dismissed.