Dore, J.
The salient issues are: (1) whether, in a camp conducted by a wholly charitable organization, a guest of the camp and recipient of the charity who did some work or chores is an employee within the meaning of section 130 of the Labor Law and section 3215 of the Education Law, prohibiting employment of minors under sixteen yea^s of age; and (2) whether such guest is an invitee or licensee.
The infant plaintiff (herein “ plaintiff ”), over fourteen but under sixteen years of age at the time of the accident in question and nineteen years old at the time of the trial, sued defendant for personal injuries caused when she fell while drying dishes in the pantry of defendant’s free summer camp for children. The infant’s father (herein “ the father ”) sued for loss of services and medical expenses. After trial before the court and a jury, the jury rendered verdicts in favor of plaintiff for $7,500 and in favor of the father for $1,000; from judgment entered thereon defendant appeals.
Defendant, a wholly charitable society, organized under a legislative act providing for the incorporation of charitable *90 societies, owned and operated for many years a free camp for children known as “ Old Oak Farm ” at Somers, Westchester County, New York. The camp has been maintained since 1892, to give children the benefits of outdoor fresh air in the country, while teaching them to live, work and play together. Defendant paid the campers’ railway fares to and from the camp which was not self-sustaining. The sources of all funds with which defendant operated the camp were solely voluntary charitable contributions from individuals, churches and charitable funds or foundations. No money whatever was received from any of the campers; no meals or lodgings were furnished to any for pay; and no money was paid to any camper for any chores. In the age group over fourteen, however, campers did some chores, reciprocated by campers within the same age group, such as setting tables, serving meals, washing or drying dishes. The remainder of the time was devoted to a religious and recreational program, the latter consisting of hikes, picnics, games, swimming and other sports and diversions.
In two previous years, 1941 and 1942, plaintiff had attended the camp also as a free guest, but did no chores. In 1943, plaintiff again attended as a free guest and, as she was over fourteen she did certain chores as other children did in the same age group.
On the extent of her chores at the camp, plaintiff under questions from her counsel, testified to (1) setting table, serving other children and removing and drying dishes at each meal (about two hours, she estimated, at every meal); and (2) certain other chores (about one hour). She did not expressly testify she did this every day including Sunday, but plaintiff’s brief contends on the basis of her testimony that she did work seven hours a day for seven days a week or a total of forty-nine hours a week. It is uncontradicted that there were at the time three hundred children or minors at the camp, from age six to nineteen or twenty, and apparently all over fourteen did some chores; on this and other facts in evidence, plaintiff’s contention as to what she alone did appears to be highly improbable and exaggerated. The camp director, Mrs. Ruth Humble, at trial no longer in defendant’s employ, testified that not all the girls did all of these chores, that they were divided up; that each such girl was asked to keep her own room in order and might have been given one other little job, such as washing or drying dishes or serving at table; that the “ only one ” job she knew “ positively ” plaintiff was asked to do and did was *91 to help with other girls to dry the dishes. There is no testimony to show that the doing of any work by plaintiff was made a condition of her going to or remaining at the camp or that either plaintiff or any of the others who reciprocally rendered such service to one another received any pay therefor.
Plaintiff testified that on August 25, 1943, she was drying dishes in the pantry and was standing on a duckboard, a low wooden stand made of slats or boards one inch thick and two inches wide, held together by crosspieces; the duckboard, three feet long and sixteen to eighteen inches wide, was placed on the floor near the sink. Plaintiff testified that at the time the accident happened she had stepped on the duckboard and while standing on it felt it “ soft ” under her foot; she looked down and saw a crack in one of the slats which she said she had previously seen in that slat; she turned around and was stepping forward when she felt the duckboard “ caving in she lost her balance, fell to the floor and received the injuries in question. Defendant adduced no medical testimony and no issue is raised on appeal as to the amount of the verdicts.
Defendant denied that the accident happened while plaintiff was standing on the duckboard and that any slat was soft, or cracked, or caved in. Defendant offered the testimony of two eyewitnesses, plaintiff’s fellow-campers, present when the accident happened. Both testified that plaintiff was not standing on the duckboard when she fell, but that she tripped against the duckboard. Marjorie MacDonald, one of such witnesses, said that immediately before the accident her attention was directed to plaintiff because plaintiff was crying over something in a letter she had received and that plaintiff was not standing on the duckboard when the accident happened but she tripped against the duckboard and so fell to the floor. The other fellow-camper, Aleda ■ Zingerman, also an eyewitness, testified that plaintiff was not at the time standing on the duckboard but walking across the room when she tripped against the corner of the duckboard and so fell. Mrs. Humble, the camp director, testified that she inspected the premises every day and inspected the duckboards many times before August 25th and they were like new with no cracks before or after the accident; and that she stood on the duckboard near the sink about three times a day for the purpose of getting a drink of water from the artesian well that was there. The other two above-named defendant’s witnesses also denied there was any crack in the duckboard and testified that it was in good condition before and after the accident.
*92 Plaintiff alleges but one cause of action based on common-law negligence and alleged violation of section 130 of the Labor Law. The father’s action rests on the same basis.
The court submitted to the jury the issue of defendant’s alleged common-law negligence including constructive notice, and plaintiff’s freedom from contributory negligence; he also submitted defendant’s claimed liability based upon alleged violations of the Labor Law and the Education Law.
In the charge the court told the jury that the Labor Law provides that no child under sixteen ‘ shall be employed in, or in connection with, or for, any trade, business or service and that the Education Law provides that ■“ It shall be unlawful * * * to employ in any business or service a minor under
sixteen years of age who does not present a standard employment certificate, a special employment certificate, a farm work permit, or a vacation work permit issued for work in which he may be lawfully engaged.” No such employment certificate was sought or procured. The court left it to the jury to say whether plaintiff was an employee under the statutes in question, and charged that if plaintiff was such employee a violation of either of the statutes read was negligence per se, and the employer had the duty of reasonable care to provide a reasonably safe place to work.
The court refused to charge at defendant’s request that, under the circumstances revealed in this case, there was no violation of the Labor Law or Education Law. Defendant’s counsel specifically excepted to the charge that if there was employment, the mere fact that the child was injured upon the premises established negligence per se.
Defendant contends that under the circumstances disclosed plaintiff was not an employee within the meaning of either the Labor Law or the Education Law but was a gratuitous licensee; that there was no proof whatever of any actual or constructive notice or any actionable negligence on defendant’s part; that the charge that violation of the Labor Law or the Education Law was negligence per se was error; that if there were a violation it was not the proximate cause of the injury; that the verdict is against the overwhelming weight of the evidence, and 'that the father’s claim is barred by the Statute of Limitations.
As above indicated one of the chief issues on this appeal is whether a charitable organization such as defendant, conducting for children a free camp, not self-sustaining, to which all the funds were supplied by outside voluntary contributions and no *93 meals or lodgings furnished to any camper for pay nor any pay given for any of the chores the campers over fourteen did, is subject to liability as an employer under the above stated sections of the Labor or Education Law.
Section 130 of the Labor Law, provides:
“ 1. No child under sixteen years of age, except as otherwise provided in this article, shall be employed in or in connection with or for any factory, mercantile establishment, business office, telegraph office, restaurant, hotel or apartment house, theatre or other place of amusement, bowling alley, barber shop, shoe-polishing establishment, or in the distribution or transmission of merchandise, articles or messages, or in the sale of articles.
“2. No child under sixteen years of age, except as otherwise provided in this article, shall be employed in or in connection with or for any other trade, business or service.” Subdivisions 3 and 4 then set forth a number of exceptions expressly permitting employment of minors fourteen years or over on obtaining employment or vacation work certificates, etc.
Article 65 of the Education Law, “ Compulsory Education and School Census ” (§ 3215, subd. 1), “ Unlawful Employment ”, has similar provisions making it unlawful to employ in any business or service a minor under sixteen with similar exceptions not here relevant permitting employment of a minor fourteen or over.
Plaintiff relies on Warney v. Board of Education (290 N. Y. 329) as an authority for holding that plaintiff was employed by defendant and that section 130 of the Labor Law and section 629 of the Education Law are here also applicable. But that case is clearly distinguishable on its facts from the case at bar. In the Warney case (supra) the defendant Board of Education admitted the child was employed in the cafeteria and indeed contended she was an employee so far as the Workmen’s Compensation Law was concerned. Moreover, the basis for holding the statutes in question there applicable was the fact that then subdivision 22 of section 310 of the Education Law, permitted, as the Court of Appeals expressly states “ the defendant Board to ‘ provide, maintain and operate a cafeteria or restaurant service ’ so long as it was self-supporting ” (p. 336); and the court added that making the project self-supporting was making it a commercial project. Chief Judge Lehman and Judge Desmond concurred in the result in a memorandum holding that section 130 of the Labor Law was directed against various evils not found in connection with lunch-time employment of *94 children in a school cafeteria and the statute should not be so construed as to forbid such employment. But the two factors above pointed out completely distinguish the Warney case from this case. Here defendant does not admit but absolutely denies any employment and no relation of employer and employee existed; here, too, the project was not self-supporting but supported by outside charitable contributions: the testimony of defendant’s secretary to that effect was not questioned, he was not even cross-examined; no payments were made by guest campers and the chores performed by plaintiff were reciprocated by other campers in the same age group for the benefit, not of the charity, but of the community. Further, in the Warney case at the time of the accident the infant was twelve years of age and the prohibition was absolute as the statutory exceptions permitting employment of a minor who is at least fourteen years were not applicable. In that case also the court pointed out: “ There was no claim that there was common law negligence ”. (P. 333.) The sole claim was breach of statutory duty.
There appears to be no case other than the one at bar in which a charitable organization such as this defendant has been held liable as it could have been here under the court’s charge as an employer for violation of the statutes in question.
There are, however, eases involving the Workmen’s Compensation Law which shed some light on the issue. In Matter of Hall v. Salvation Army (26 N. Y. 110), an inmate of a charitable institution, a cook by occupation, made claim for workmen’s compensation. Shortly after becoming an inmate of the home in question, the cook was put to work at his trade with the understanding that he would be placed on the payroll and would receive room, board and $3 per week. The Industrial Board allowed the claim, holding that he was an employee. In upholding the board the Court of Appeals significantly stated that its decision did not cover cases in which inmates of charitable institutions were required to perform slight manual services even though such inmates receive small sums of money, etc., for such services. The court said (p. 112):
“ We do not intend this decision to cover such cases. We are merely deciding that the findings of the ‘ Board ’ in the case at bar are sustained by some evidence.
“ It may well be that inmates of the ‘ home ’ who are taken in as a matter of charity, and permitted to remain upon condition that they perform some labor in and about the ‘ home ’ are not retained therein under any contract of hire, express or implied.’ ”
*95 In Matter of Seymour v. Odd Fellows’ Home (267 N. Y. 354) an inmate of a charitable home, who was under no duty to work, was permitted to do odd jobs about the premises for which he was paid at the rate of twenty cents per hour. It was held that he was not an employee within the meaning of the Workmen’s Compensation Law and that the award of compensation for his death resulting from injuries received was unauthorized.
Plaintiff also relies on cases in which violations were found to have been committed despite, it is claimed, the fact that a master and servant relationship did not exist between the infant and the owner or overall employer charged with having violated the statute. “ Employed ” as used in Labor Law is defined to include “ permitted or suffered to work ” (Labor Law, § 2, subd. 7). Thus when one engages an independent contractor to perform certain work and the contractor employs infants in violation of the statute, the one engaging the contractor will be held to have violated the law in permitting the infant to do the work; or when an employer with knowledge or sufferance of the practice permits his employee (not casually but for a long time with a fair measure of continuity and performance), to retain an infant under fourteen to help the employee in the employer’s business, the employer has been held liable (People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 225 N. Y. 25, 29-30).
The rulings in the cases thus relied on, only one of which (People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., supra) is a New York authority, holding that the owner or overall employer may be held liable for his contractor or employee’s acts are not here controlling or applicable. In Ferro v. Sinsheimer Estate, Inc. (256 N. Y. 398, 401-402) the Court of Appeals held: "The words ‘ employer ’ and ‘ employee ’ are used in the act in the common-law understanding of those •words. They denote a contractual relation, not a mere casual voluntary rendition of a slight service or favor rewarded by a gratuity.” Subdivision 5 of section 2 of the Labor Law defines employee as a “ mechanic, workingman or laborer working for another for hire.” Where the employment is in violation of the statutory prohibition, the fact that the employee worked with or without .compensation is no defense. (Labor Law, § 3.) But, as in the Workmen’s Compensation Law cases, a rélationship of employer and employee must be shown to exist before either the Labor Law or Education Law is applicable.
*96 or master and servant ndant; conducting the In this case there was no contract of hire relationship between plaintiff and defer camp was not a business or an enterprise of a commercial character self-supporting and available to the general public; no alternative of payment was permitted; and the attendance here, unlike attendance in penal or quasi-penal institutions, was purely voluntary. Accordingly there was no employment of plaintiff within the statutory or ordinary meaning of that term, and the trial court should have determined as matter of law that plaintiff was not an employee so as to bring into application the provisions of the Labor Law or Education Law. The charge as made and the refusal to charge as requested by defendant in respect to such laws were erroneous.
In view of our determination of this major issue, it is unnecessary to discuss other contentions urged by defendant.
On the charge as made, the jury’s verdict being general, it is not possible to determine whether the verdicts were based on a finding that plaintiff was an employee in violation of the Labor Law and Education Law or on a finding that plaintiff was an invitee or a licensee,— all three theories having been charged by the court without exception cr request by plaintiff.
Plaintiff’s status in the camp generally was similar to that of a social guest of defendant and as such she was a licensee (Mendelowitz v. Neisner, 258 N. Y. 181, 184; Roth v. Prudential Life Ins. Co., 266 App. Div. 872; Patnode v. Foote, 153 App. Div. 494; cf. also, Restatement, Torts, §§ 331, 332, Comment a), and defendant generally owed her only .the duty to exercise reasonable care to disclose to her dangerous defects known to defendant and not likely to'be discovered by plaintiff (Restatement, Torts, §'342, p. 932; cf. also [at pp. 939-940] summary of rule stated in § 342). However, on this record at the time of the accident herein plaintiff was in the pantry drying dishes as part of camp routine for girls of her age, and she was at that time and place an invitee, or so a jury could find, and in such case defend-" ant would have the common-law duty to use the reasonable care due an invitee.
So far as alleged common-law negligence is concerned, defendant did not claim immunity as a charitable organization. No actual notice of the allegedly defective condition of the duck-board in question was claimed. The sole proof of constructive notice, if any, is the bare inference sought to be drawn from plaintiff’s testimony that she felt the board, was soft ” and had previously seen the claimed “ crack ” therein, with no indi *97 cation, however, of how long before the accident she had thus seen it. Accordingly, if a jury found as facts that the claimed defect was a dangerous defect likely to cause injury to one using the duckboard; that in the exercise of reasonable care defendant should have known of such dangerous defect and had constructive notice thereof in time to correct it before the accident; and also found that such defect proximately caused the accident and the injuries without contributory negligence on plaintiff’s part, defendant on such findings might be held liable as to the infant plaintiff on the surviving cause of action based solely on common-law negligence.
The father’s claim, however, is barred by the Statute of Limitations. The accident occurred on August 25, 1943. The record statement under rule 234 of the Buies of Civil Practice shows that the summons and unverified complaint were not served until November 6, 1946, eoncededly after the three-year limit specified in subdivision 6 of section 49 of the Civil Practice Act. The exception given the infant under section 60 of the Civil Practice Act provides that the period of infancy is not a part of the time limit for commencing an action until more than one year after infancy ceases. Accordingly, the infant’s action was timely because until she became twenty-one the law gave her the right, if she chose to exercise it, to maintain the action by guardian ad litem (Frehe v. Schildwachter, 289 N. Y. 250, 252; Civ. Prac. Act, §§ 201-202). But the exception given the infant under section 60 of the Civil Practice Act does not inure to the parent’s cause of action for loss of services and medical expenses; that cause of action must be commenced within three years after its accrual ; and, as it eoncededly was not instituted within the statutory period, the father’s action is barred (Pitrelli v. Cohen, 257 App. Div. 845). The father does not dispute the dates involved but contends the action was one to recover upon a liability created by statute, namely, a violation of the Labor Law, under subdivision 2 of section 48 of the Civil Practice Act providing a six-year limitation for recovery on a liability created by statute. As we hold that the Labor Law in the state of facts disclosed does not apply, for that reason alone without considering others that may be relevant, there is no merit to that contention. Accordingly, the motion to dismiss the father’s cause of action, as barred by the Statute of Limitations, should have been granted.
The judgment appealed from should be reversed, the father’s complaint dismissed, with costs, and a new trial ordered solely *98 on the infant’s cause of action based on alleged common-law negligence, with costs to appellant to abide the event.
Cohn, Callahan, Van Voorhis and Shientag, JJ., concur,
father’s complaint dis-Judgment unanimously reversed, the missed, with costs and á new trial ordered solely on the infant’s cause of action based on common-law negligence, with costs to the to abide the event.