RICHARD JEWTRAW, Respondent, *v.* HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant.

Third Department, June 18, 1954.

*Bruce R. Sullivan* and *Charles B. Sullivan* for appellant.

*John T. DeGraff* and *Clifford W. McCormick* for respondent.

BERGAN, J. This case has had a long course before the court at Trial and Special Term and on appeal, induced in part by the differing positions which the litigants found it needful to take in the protection of their several interests as the case passed from one stage to another in its procedural evolution. Having a record before us now in a more fully rounded form than heretofore, we reach for answers that may go toward solving the litigation with finality.

The plaintiff Jewtraw and the defendant Hartford Accident and Indemnity Company's assured William E. Davis both live at Saranac Lake. They are neighbors and friends. On February

3, 1949, Davis made a trip in his truck to Ottawa, Canada, to get some costumes for a Lake Placid winter carnival.

It must be deemed to have been found that Davis asked plaintiff Jewtraw to accompany him, to " go along and help " and agreed to pay Jewtraw's expenses. Davis worked as a refrigerator repairman and getting the costumes for the carnival was no part of his work or business. He understood, however, that he was to be paid for the trip but had not actually been paid at the time of trial.

An accident happened in the Province of Ontario in which Jewtraw was injured. The Highway Traffic Act of Ontario (Ontario Rev. Stat., 1937, ch. 288, § 47, subd. 2) which was deemed applicable to the accident provided for " non-liability " by the owner of a motor vehicle for negligence to a " gratuitous passenger ". Jewtraw sued Davis in the New York Supreme Court for damages for injuries due to negligence. To avoid the effect of the Ontario guest statute he pleaded that he had been " expressly or impliedly engaged and employed by the defendant to accompany him in said automobile truck " for the purpose of obtaining and taking the costumes to Lake Placid.

The liability policy which defendant insurance company had written on Davis' truck contains enumerated exclusions. One is of primary importance in this litigation and is set forth as " exclusion (d) " which provides that the policy did not apply to injury " of any employee of the Insured while engaged in the employment, other than domestic, of the Insured or in domestic employment if benefits therefor are either payable or required to be provided under any workmen's compensation law ". " Exclusion (e) " provides that the policy does not apply " to any obligation for which the Insured or any company as his insurer may be held liable under any workmen's compensation law ".

The insurance company under certain specific requirements of its policy provided counsel for Davis who interposed an answer in the action of Jewtraw denying the allegations of negligence and denying the employment relationship, pleading among other things that plaintiff was " riding as a gratuitous passenger " and alleging the effect of the Ontario statute as avoiding Davis' liability for negligence to such a passenger.

A short time before the trial of the negligence action the insurance company wrote Davis calling attention to the claim being made by Jewtraw that he was in the employ of Davis and stating that " if this fact is established in trial and judgment is rendered on that fact " there " is no coverage under   *   *   *

your policy ". The case was submitted to the jury with a distinct instruction from the Judge that unless it were found that the relationship of employer and employee existed between Davis and Jewtraw at the time of the accident there could be no recovery. The jury returned a general verdict for $10,000 for Jewtraw.

Upon appeal here the judgment entered on the verdict was affirmed because the court was of opinion the record was sufficient to create an issue of fact on the employer-employee relation of the parties. (*Jewtraw* v. *Davis*, 277 App. Div. 918.) The attorney for the insurance company who prosecuted the appeal for Davis argued that on the facts shown in the record the relationship was too casual to have matured into such a master and servant status as to avoid the effect of the Ontario guest statute.

This court was told that the facts on the trial showed no element of dominance and serviency between Davis and Jewtraw, or any true consideration for services rendered by the purported employee; and it was contended by the appellant that this was " the ordinary relationship of two friends, both riding to the City of Ottawa for the first time, one assisting the other because of their long-standing, friendly social relationship and the fact they were practically neighbors ". (Appellant's Brief, p. 28 in *Jewtraw* v. *Davis*, 277 App. Div. 918.)

The appellant's brief on that appeal also advanced the argument that " the relationship was not master and servant, but was a voluntary rendition of services or a favor to be rewarded by a gratuity ", language which almost exactly took up the words quoted by HUBBS, J., in *Ferro* v. *Sinsheimer Estate* (256 N. Y. 398, 402) to the effect that " employment " in the sense in which the word was understood both at common law and in workmen's compensation statutes is not met by " a mere casual voluntary rendition of a slight service or favor rewarded by a gratuity ". This language, in turn, had its origin in a dissent in this court in *Matter of Mandatto* v. *Hudson Shoring Co.* (190 App. Div. 71).

Jewtraw's brief on that appeal, on the other hand, was a full-blown argument for the existence of a conventional employment relation. He argued that " The jury necessarily found that the relationship of master and servant existed and this finding is abundantly supported by the evidence ". (P. 8.) He added that the " contract of service was conclusively established by undisputed proof of an offer, acceptance and consideration " and plaintiff " had done the work expected of him " and defend-

ant " had paid the consideration he agreed to pay ". (P. 9.)

Cases under guest statutes were cited in support of Jewtraw's contention. One was *Ganzhorn* v. *Reep* (234 Iowa 495). It was concluded by Jewtraw on this point that his " status as employee " and Davis' " control as employer were conclusively established by defendant's statement that there was ' work ' to do and his request that the plaintiff go along to ' help ' ".

An additional point argued by the appellant Davis on that appeal was that in the light of the charge of the court to the jury employment was necessarily to be inferred from the verdict and that plaintiff thereupon came within the operation of the New York Workmen's Compensation Law. This was based on a showing that the " employment " began and ended with the journey in New York. This court was of opinion in its decision of affirmance that this question having been raised for the first time on appeal was not then available (p. 919).

The insurance company refused to pay the judgment against its assured Davis, whereupon Jewtraw, as judgment creditor succeeding to the rights of the assured, instituted this action under Insurance Law (§ 167, subd. 1, par. [b]) to recover the amount of the judgment against the defendant as the insurance carrier of Davis. Jewtraw in the complaint in this action pleaded, merely, that he was " riding as a passenger " in the Davis truck when the Ontario accident occurred.

The insurance company denied this allegation. It pleaded as a separate defense the allegation that had been made by Jewtraw of his employment by Davis, as set forth in the original Jewtraw complaint; and pleaded the charge of the Judge to the jury in the first action that liability could be predicated only on a finding of relationship of employer and employee, and, therefore, in view of such employment, the exclusion from coverage of injury to any employee of the insured while engaged in the employment of insured.

Upon these pleadings supplemented by affidavits addressed largely to matters of record on the prior trial, plaintiff moved at Special Term for summary judgment and this motion was granted. In the light of the arguments that are advanced on the appeal presently before us, it seems helpful to examine the positions taken by the respective parties in the present action when its merits were first judicially examined on the plaintiff's motion at Special Term for summary judgment.

Jewtraw's affidavit on that motion contained a statement of his legal views as well as of his version of facts. He addressed

himself first to the defense which the insurance company had pleaded in its answer under exclusion (d) in the policy excepting employees of the insured from coverage. He italicized the words of the clause relating to workmen's compensation. He argued that this clause "may reasonably be construed to disclaim coverage under the policy only where the injured employee is entitled to the benefits of compensation under the provisions of any applicable workmen's compensation law." (Appellant's Brief, p. 32 in *Jewtraw* v. *Hartford Accident & Ind. Co.,* 280 App. Div. 150.)

From this Jewtraw drew the inference that the decision of this court on the appeal from the judgment in the negligence action "estops the defendant from raising the defense of exclusion (d)", (p. 32) apparently on the theory that in affirming the judgment in the negligence action and in stating that any defense that Davis might have had that workmen's compensation would be the exclusive remedy was raised too late on appeal we intended to hold that exclusion (d) would not be regarded as a defense to this action as well.

The affidavit of the insurance company's lawyer in opposition to the motion for summary judgment urged on the Special Term a meaning of the language of exclusion (d) quite different from that which Jewtraw had deduced. This meaning, thus advanced, was that exclusion (d) applied to any employee of the insured without regard to workmen's compensation, other than a domestic, and it also excluded a domestic employee if he was protected or required to be protected by workmen's compensation.

Jewtraw's affidavit asserted in support of his right to summary judgment that the insurance company was estopped from raising the defense of exclusion (d) "by its palpably prejudiced defense of the insured's action". He argued that knowing that Jewtraw as plaintiff in the original action was pleading employment and that its policy would not cover Davis in that event, the company ought to have withdrawn from the defense of the action against its assured; that it proceeded to conduct the defense of its assured "in a manner which best served its own interests, although these interests openly conflicted with the rights of the insured."

The affidavit of the insurance company's attorney in turn dealt with the subject by stating that under another provision of the policy, which it had pleaded as a separate defense, the company was obliged to "defend any suit against the Insured

alleging such injury '' whether groundless or not; that it was its duty under the New York authorities which he cited to make such a defense; that the defense of the assured Davis had been fairly and properly conducted; that no right of the company was waived in its management; and that the insured agreed that the conduct of the defense and the prosecution of the appeal by the carrier did not waive any defense the carrier might otherwise have. The insurance company asked a right to a trial of the factual issues thus raised.

A further affidavit in support of the insurance company's right to a trial showed in some considerable detail the recent development in New York liability policies of exclusion (d) which had previously merely read so far as here pertinent, '' employee * * * other than domestic '', but which had been enlarged when some domestic service began to fall within workmen's compensation coverage. This was in support of the carrier's argument that the clause had nothing to do with workmen's compensation coverage of employees excluded, except as to domestic employees covered by compensation.

The court at Special Term, however, did not find it necessary to deal with these arguments addressed to construction. It accepted the initial argument of Jewtraw literally that exclusion (d) was intended to cover only employees for whom benefits were provided or required by law to be provided under Workmen's Compensation Law. It held that since the defense of workmen's compensation as an exclusive remedy was available in the negligence action to the defendant Davis and had not been asserted by the insurance company in the management of Davis' case the defense of exclusion clause (d) was not available to the company in this action. Upon this view summary judgment was granted.

In this court there was a reversal of the order granting plaintiff summary judgment and a trial of the issues was directed (280 App. Div. 150). The opinion upon which that appeal was decided must be read, however, not merely in the context of the positions of the parties reflected in the affidavits before the Special Term, but also in the light of the arguments advanced on that appeal.

The insurance company then argued that exclusion clause (d) must be construed to relieve the company from coverage for the injury to Jewtraw because it was found in the negligence action he was an employee of Davis. This construction of that clause in the policy on which the argument rested was not then directly

challenged by Jewtraw; other results were argued by him to have been deducible if he were found to have been an employee. The legal issue between the parties on that appeal as framed by their respective briefs, therefore, was not the construction of the exclusion clause, but whether the insurance company was estopped from asserting the defense of the exclusion clause. The single point made in the Jewtraw brief was that there was such an estoppel arising from the management of the defense of Davis by the insurance company.

It was not then argued directly by Jewtraw as it had been at Special Term and as the Special Term had found as the basis of its decision granting summary judgment, that the defense of workmen's compensation would have been available for a non-domestic employee under exclusion clause (d), but an ingenious argument was wound around the assertion which the carrier's lawyer had made in his brief on the earlier appeal from the judgment in the negligence action, that the workmen's compensation remedy was the only remedy available to Jewtraw in his action for damage.

Jewtraw argued that the defense of workmen's compensation " was raised  *  *  *  for the first time, on appeal when it could have been raised on the trial ". Therefore, he asserted, that when the insurance company assumed the defense of an action and failed " to assert available defenses it cannot in equity or in good conscience disclaim liability under its policy ". (P. 6.)

It is " futile " the brief continued, for the company to assert " as it does now, that this defense would not have succeeded if it had been raised on the trial. The defendant thought well enough of this defense to assert it with emphatic conviction in its prior appeal to this Court ". (P. 6.)

For the first time Jewtraw obliquely began in this action to suggest by way of collateral argument what the insurance company's lawyer had asserted for Davis on the first appeal, namely, the possibility that it could be found that Jewtraw's employment with Davis was not " employment " in the full sense in which that term was used in the exclusion clause, but might have been found in the negligence action to have been casual and for a nominal consideration. The *Sinsheimer* case (256 N. Y. 398, *supra*) was cited. But Jewtraw having won the motion at Special Term for summary judgment actually made only one point in his brief, as we have noted, which was the operation of an estoppel against the insurance company.

It was suggested by Jewtraw that the workmen's compensation defense had not been pleaded in the negligence action by the insurance company as a stratagem in its own self-interest to leave open to it the right to disclaim; because if such defense had been pleaded, and employment not coming within workmen's compensation coverage had been found, the door to disclaimer of liability might have been closed to the company as the result of such a construction of the term "employment" in the exclusion clause.

These arguments are treated thus in unusual detail to afford adequate approach to the decision made by this court in response to them. It is in the light of the fact that neither side directly argued the construction of exclusion clause (d), or its intent, that the opinion stated in general language of construction that it "excludes all employees" (280 App. Div. 150, 153), which, of course, is what it does in literal terms. The court's opinion left the point of construction in this respect exactly where the parties had placed it. The court disagreed with the merits of decision of the Special Term in granting a summary judgment based on the failure of the insurance company to assert the defense of workmen's compensation in the main action.

We held in effect that one triable issue between the parties was whether the insurance company had been estopped by its manner of conducting the defense of its assured from asserting the exclusion clause relieving it from liability to its assured's employees. We also left open the question whether the defense of workmen's compensation as an exclusive remedy could have been truthfully and properly asserted in the defense of Davis in the main action, which would depend, among other things, as the opinion stated, on whether Davis had provided appropriate compensation coverage.

On the plaintiff's motion for summary judgment it will be recalled the defendant insurance company had urged at Special Term that the question whether the relationship of Jewtraw and Davis was that of employer and employee was a triable issue and that on that question it should have a right to a trial in the action between Jewtraw and itself as Davis' carrier. Its affidavit then stated that " Action No. 1 was predicated and the plaintiff succeeded upon the fact of the plaintiff and defendant in Action No. 1 being employer and employee. Whether or not this is a fact cannot be established unless the defendant in Action No. 2 is given an opportunity to be heard and to submit testimony and written documentation accordingly ".

But upon the trial after the reversal by this court of the order granting summary judgment, when the plaintiff Jewtraw offered evidence on this subject, the insurance company took the opposite view and objected to the offer. The Trial Term sustained the objection. Its decision to exclude was in part predicated on its interpretation of the decision of this court reversing the order for summary judgment as having determined that it was conclusively established as a matter of law between this plaintiff and this defendant insurance company that plaintiff was an " employee " of Davis within the terms of the policy, and partly on his own opinion that the verdict of the jury on the first action against Davis was binding between these parties on what was meant by " employer " and " employee " in the policy of insurance.

It became clear as the trial proceeded that the factual issues which we had left open were illusory. There was no proof that Davis had provided workmen's compensation coverage for Jewtraw which might have made available in the negligence action the defense that workmen's compensation would be Jewtraw's exclusive remedy. Therefore, an assertion of such a defense by the insurance company in the management of Davis' defense would have been improper. The failure to assert it could certainly not have incurred a liability against the carrier.

Nor was there any proof that the insurance company had waived exclusion clause (d). The proof as it developed was that the company gave written notice before the negligence action trial to Davis as its assured that Jewtraw was claiming to have been an employee of Davis when he was injured and that if he was found to have been an employee the policy did not cover such a liability.

The insurance company went on with the management of the action as it was required to do under its contract of insurance; its assured acquiesced in this defense; there is no suggestion that the trial was not conducted in defense with due skill and competency, or that if Davis had conducted the defense himself or hired another lawyer it would have been done differently or better; and defendant prosecuted an appeal from the judgment in the negligence action under a written agreement with its assured Davis that the taking of the appeal was without prejudice to its claim that there was no coverage.

Specifically Davis stated in writing his understanding when the company took the appeal here that if an affirmance resulted the " Company will still claim they are not responsible ". There

was in all this· no waiver by the company of any of its rights under the contract of insurance.

The Judge sent the case to the jury on quite a different theory from any which up to now we have discussed. The theory of factual issue submitted was whether the assured Davis had made with the insurance company a " non-waiver agreement " pursuant to which the company managed the defense of the Jewtraw negligence action against him. If Davis had not made a " valid non-waiver agreement " with the company the jury was instructed to find a verdict in favor of Jewtraw against the insurance company for the amount of the judgment.

What was meant by a " non-waiver agreement " as employed in these instructions was not elucidated to the jury and is not· entirely clear to us from an examination of the charge; but we infer from the alternatives which the Judge allowed the jury he was of opinion that if the insurance company undertook to defend the negligence action it could do so without risk of full liability on the resulting judgment only if its assured consented that the company would not thereby (in managing the case) waive its defense under exclusion clause (d); and that if it did not obtain such an agreement, i.e., " non-waiver " from its assured, it lost the benefit of exclusion clause (d) by undertaking the defense and incurred a legal responsibility to pay the judgment in the negligence action.

The jury under these instructions returned a verdict of $10,223.99 against the insurance company; but the respondent on appeal does not argue the validity of the factual theory of " valid non-waiver agreement " on which the case was submitted. Appellant, on the other hand, argues that submission in this form was without any basis in the record and we do not seem to be able to justify it as a question for the jury.

The main argument of the respondent, therefore, is not now in justification of the basis of the verdict on which the judgment appealed from is based, but turns itself rather to a plea for a re-examination of the question, as between the present two parties, whether the relationship between Davis and Jewtraw in going to Ottawa to get the costumes was " employment " as used in exclusion clause (d) and whether Jewtraw was in that trip an " employee " of Davis notwithstanding the pleading and the form of submission on the question of " employment " and " employee " in the negligence action.

We have been at some pains to demonstrate that the parties have, in the long and winding progress of the litigation, occupied

variable positions on this question as their interests seemed to be affected. The question now raised was not squarely presented to us on the motion for summary judgment. It is here now, will be decisive of the litigation, and therefore ought to be met fully.

Upon the trial of the present action, as we have observed, Jewtraw offered evidence designed to show the " elements " that " may go to make up the relationship that existed as to employer or employee ". But in Jewtraw's argument here for the affirmance of the judgment entered on the jury's verdict it is argued that the question of employer-employee relationship between Davis and Jewtraw should be treated as a matter of law and held to be not within the scope of exclusion clause (d).

It is not argued by him, as it was on the trial when his offer of proof on this subject was rejected by the court, that this presents a factual issue as well as a legal one; but to win an affirmance of a judgment based on a verdict resting on a wholly different theory of submission to the jury, the plaintiff would be under the necessity of demonstrating that he was entitled to a judgment as a matter of law without need for factual evaluation.

We hold under the record as it is now presented to us that there exists a triable issue of fact between the plaintiff Jewtraw and the insurance company defendant whether in making the trip to Ottawa with Davis to get the costumes under the terms of the invitation by which Davis was to pay the expenses of the trip and Jewtraw was to help, the relationship was one of " employment " and Jewtraw was Davis' " employee ". Judgment should follow as to the application of exclusion clause (d) of the policy accordingly as this may be found on the trial and become reflected in a general verdict.

In holding that this question is an open one we are bound to look at the effect on the rights of the present parties of the first judgment in favor of Jewtraw against Davis in which " employment " of Jewtraw by Davis was pleaded by Jewtraw, submitted to the jury as a question of fact and found affirmatively against Davis by the necessary implication of the general verdict.

Jewtraw, however, has no direct contractual relationship with Davis' insurance company and he is able to sue the insurance company only because Davis would have been able to do so. He stands thus in Davis' position. When the problem is viewed in this light it will be seen that if Davis were suing his insurance company on the contract of insurance he would be able to plead that his relationship with Jewtraw was not that of

employer-employee and to argue from the actual facts of the journey which are not really in dispute, that such a relationship should not be inferred or found as far as the application between insurer and assured of exclusion clause (d) is concerned.

The judgment against Davis in Jewtraw's action based upon a general finding of an employment relationship between them would not operate to preclude Davis from showing that what was found in that action with another party was not conclusive and binding in the construction and operation of the term "employment" as between these contracting parties.

What "employment" might be regarded as sufficient to hold a man a nongratuitous passenger in an automobile traveling in Ontario under the Ontario statute might be something less, or at least different, from what might be construed to be "employment" in an exclusion clause relieving an insurance company of responsibility to its assured. When these legal areas are looked at it is to be seen they are not congruent in the geometric sense and therefore the answer given to one is not inevitably the answer to be given to the other.

The policy covered Davis generally for all liability which a court might impose on him for injuries arising out of the operation of his truck unless the exclusion became operative. Under familiar principles the exclusion must be construed strictly against the carrier. It is the "gratuitous passenger" to whom no liability is risked in Ontario for ordinary negligence (Ontario Rev. Stat., 1937, ch. 288 [Highway Traffic Act], § 47, subd. 2). A person riding in an automobile might reasonably be found to be something more than a "gratuitous passenger" as the statute uses that expression without being an "employee" as the contract of insurance uses that term.

In this respect the Jewtraw pleading of employment in the negligence action and the charge of the court in following that pleading went farther than it was necessary to go to show Jewtraw was not a "gratuitous passenger"; but the undisputed facts as actually established about what the relationship was are open to equivocal interpretations.

Hence, if Davis were suing the insurance company directly on his contract we would think he would be permitted to demonstrate this difference in legal effect. Unless Jewtraw is precluded from asserting against this defendant what Davis might have asserted, he is in substantially the same position.

We think he is not precluded by the effect of the first judgment. The legal issue is different. The insurance company was not a party to the first action and while Jewtraw broadly pleaded

" employment " to take himself out of the disability of being regarded at law as a guest in the action against Davis, still the actual facts to which Jewtraw testified as to the relationship were fairly open to the construction that he was not a guest as the Ontario statute used that term and that he was not an employee as the contract between Davis and the insurance company used that term. Thus we think he is not precluded from showing in this action the actual facts, and from arguing that it ought to be found they do not constitute employment within the terms of the insurance contract.

Since we have no New York statute avoiding liability for negligence to a gratuitous guest, the question of when a rider in a vehicle may be something more than a guest but something less than an employee of the owner of the vehicle seems not to have been passed on; but cases have arisen in which consideration has been given the question of what is " employment " and how it influences other effective legal relations. An examination of those cases suggests that the problem in the action now before us ought to be treated as an issue of fact.

One such case is *Ferro* v. *Sinsheimer Estate* (256 N. Y. 398, 401, *supra*), upon which, as we have noted before, both sides of this controversy have relied at one time or another. A boy about thirteen years old had been occasionally asked by the superintendent of a building to do some errands and small odd jobs for which the superintendent from his own funds gave him " a little money, a mere gratuity ". The boy was injured while helping the superintendent clean an elevator cable.

The action was dismissed at Trial Term because the court there was of opinion the relationship was one of employment to which the Workmen's Compensation Law applied; but the Court of Appeals held it was not employment within the statute and that an employment relationship had not been " contemplated or established ". (P. 401.) The relationship to the premises owned by the defendant of what the boy was doing on invitation of the superintendent and in the interest of the maintenance of the building was held sufficient, however, to leave it open to a jury to determine whether the boy had been injured through negligence, in which event the court held a verdict against the owner would have been warranted.

In *Matter of Mandatto* v. *Hudson Shoring Co.* (229 N. Y. 624, *supra*) the distinction between a contractual relation of employment and a " casual " and " voluntary " rendering of a " slight" service or favor for which a gratuity is given was recognized. The expressions used are from the dissenting

opinion in this court (190 App. Div. 71) adopted by the Court of Appeals on reversal. Quite similar language is found in *Lazar* v. *Steinberg* (269 App. Div. 760). These cases suggest that the actual relation between Jewtraw and Davis in making their trip together to Ottawa could be found, as a question of fact, not to have come within New York's legal conception of what is " employment ".

When we turn to decisions in other States in cases quite closely approaching the one before us under guest statutes we seem to find some further support for the view we take of what disposition ought to be made of the case. In *Sills* v. *Sorensen* (192 Wash. 318) the assured invited plaintiff to make a trip in his automobile to act as a witness for assured on the payment of a bill, for which service the plaintiff was given $2 by the assured. Injured in an accident the plaintiff recovered against the assured under a complaint which avoided the effect of the Washington guest statute by pleading he was employed by the assured.

But the Washington court held that plaintiff was not precluded by the judgment in the main action from showing that this was not " employment " as used in the policy of insurance excluding liability to employees of its assured injured in the course of their employment in the business of the assured. The court was of opinion there was an absence of such control over a man hired to become a witness as to avoid the conventional effect of employment and treated him as an independent contractor. The additional circumstance was there, however, which is not present here, that the court regarded as one element of decision the need for showing that the injury was " in the business of the assured ".

Where a man agreed to drive a truck from one city to another for a corporation of which his employer in another business was an officer, without compensation and without consideration other than two meals, it was held by the same court that he was not an " employee " of the owner of the truck within an exclusion provision of the policy (*Braley Motor Co.* v. *Northwest Cas. Co.*, 184 Wash. 47). It was further held that under the form of submission of the negligence action in which recovery had there been allowed against the assured the injured party was not deemed conclusively to have been found to be an employee of the owner of the truck.

In *Standard Acc. Ins. Co.* v. *Swift* (92 N. H. 364) a student in a school summer camp made a part payment of tuition by assuming additional responsibilities in the work program which all students at the camp shared. In the course of voluntarily

assuming such additional responsibilities he was injured. The New Hampshire court held that this did not fall within the " employee " exclusion clause of a liability policy.

The same court construed similarly an injury sustained by a relative of the assured's riding to the assured's home in the North with the understanding she should work for the assured a month later, the assured bearing the expenses of the trip from the South on which the injury was incurred. It was held that this was not " employment " within the scope of the policy. (*Merchants Mut. Cas. Co.* v. *Manzer*, 93 N. H. 34, see, also, *Home Ind. Co.* v. *Plymouth*, 146 Ohio St. 96.)

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Foster, P. J. (dissenting). Plaintiff succeeded upon the original trial on the theory he was an employee and not a guest passenger. He alleged in his complaint that he was an employee of Davis and the latter denied the allegation. Obviously plaintiff made the claim of employment so that he might establish a cause of action under the Canadian guest statute. That issue was submitted to a jury under the facts shown and pursuant to a stipulation as to what constituted employment under the Canadian Law. Implicit in the verdict of the jury was the finding that plaintiff was an employee under the facts and law.

The policy of insurance issued to Davis by the defendant company here excluded from coverage employees. The exclusion clause is written in plain and unambiguous language. By its terms the effect of it is not limited to any particular kind of employee or type of employment. It says nothing about casual or permanent employment, and I can see no impelling reason to read into it a subtle distinction of limitation so that plaintiff may qualify his original position for the purpose of obtaining a verdict against the insurance company. The argument that plaintiff stands in the shoes of Davis as against the defendant company can be of no assistance to plaintiff so far as this issue is concerned for Davis, himself, is bound by the finding of the jury that plaintiff was an employee.

I think that plaintiff should be estopped from now asserting that he was not an employee or that he was a casual employee not within the exclusion clause of the policy and hence I dissent and vote to reverse the judgment and dismiss the complaint.

Coon, Halpern and Imrie, JJ., concur with Bergan, J.; Foster, P. J., dissents in a memorandum.

Judgment reversed, on the law and facts, and a new trial ordered, with costs to the appellant to abide the event.